WAL-MART STORES EAST, INC., A/K/A, WAL-MART STORES EAST I, INC., PLAINTIFF v. REGINALD S. HINTON, SECRETARY OF REVENUE OF THE STATE OF NORTH CAROLINA, DEFENDANT

No. COA08-450

(Filed 19 May 2009)

**1. Taxation— corporate income tax—assessment of additional taxes—statutory authority to combine three related entities**

The trial court did not err by granting summary judgment in favor of defendant Secretary of Revenue based on its conclusion that the Secretary acted within his lawful statutory authority when he assessed additional corporate income taxes against plaintiff company as a result of the combination of plaintiff with two related entities because: (1) N.C.G.S. § 105-130.6 on its face does not restrict the Secretary to a finding of a particular type of transaction or dealing; (2) plaintiff's definition of true earnings, what the taxpayer's income would be if it had no affiliates and

WAL-MART STORES E., INC. v. HINTON

[197 N.C. App. 30 (2009)]

dealt with all parties on an arm's length basis, was rejected by the Court of Appeals since the form of business organization may have nothing to do with the underlying unity or diversity of business enterprise; (3) the tax payable calculated by W-M REBT for 1998-99 was $786 income tax payable in North Carolina on $1,208,178,874 in total net income when plaintiff operated at least 82 stores in North Carolina; (4) there was a connection with the three combined subsidiaries with North Carolina when W-M REBT owned and leased stores within North Carolina, passed along income to W-M PC received from leasing and subleasing these stores, which W-M PC further passed along to plaintiff in the form of dividends; (5) plaintiff did not cite any cases, and none were found, where our Supreme Court has ever deemed the unitary method to be constitutionally infirm, and plaintiff has not shown that the dividends received from W-M PC are in any way part of a discrete business; and (6) to the extent that authority from other jurisdictions help construe our statute, it weighs in favor of the Secretary and against plaintiff.

2. **Constitutional Law; Taxation— corporate income tax— true earnings definite standard—Commerce Clause—N.C. Constitution article V, section 2(6)—formal rule-making procedures not required**

The trial court did not err by granting summary judgment in favor of defendant Secretary of Revenue based on its conclusion that the Secretary acted within his lawful constitutional authority when he assessed additional corporate income taxes against plaintiff as a result of the combination of plaintiff with two related entities because: (1) an elemental principle of taxation law is that the label attached to a transaction or balance is of no importance, and the amount plaintiff sought to classify as dividends was in actual fact rental income; (2) the authority given the Secretary in N.C.G.S. § 105-130.6 was not without sufficient direction, and true earnings is a sufficiently definite standard so that the Secretary may set policies within it without exercising a legislative function; (3) the mere fact that another taxpayer has been treated differently from the plaintiff does not establish plaintiff's entitlement, and the taxpayer cannot premise its right to an exemption by showing that others have been treated more generously, leniently or even erroneously by the IRS; (4) plaintiff cited nothing in the record, and nothing was found, supporting its argument that the assessments violated the Commerce Clause of the

WAL-MART STORES E., INC. v. HINTON

[197 N.C. App. 30 (2009)]

U.S. Constitution since defendant allegedly only forces combination of foreign multistate corporations; (5) North Carolina Constitution article V, section 2(6) does not require any particular deduction from gross income to be allowed in calculating net income, but implicitly recognizes the authority of the General Assembly to determine what deductions from gross income are properly allowed in the computation of net income; (6) the Secretary was not required to follow the formal rule-making procedures in Chapter 150B since the filing of a consolidated or combined return is exceptional and not allowed unless specifically required; and (7) plaintiff failed to show how the cases it cited compelled a result in its favor.

**3. Penalties, Fines, and Forfeiture— understating taxable income by more than 25%—negligence finding not required**

The Secretary of Revenue did not err by assessing penalties against plaintiff based on plaintiff's understating its taxable income by more than 25% because: (1) N.C.G.S. § 105-236(a)(5)(c) does not require a finding of negligence as is typically necessary under N.C.G.S. § 105-236(a)(5)(a); and (2) plaintiff did not appear to dispute that if the Secretary's assessment based on the combined returns was lawful, the plaintiff's income was understated by more than 25% which operated to invoke the penalty provision of N.C.G.S. § 105-236(a)(5)(a) without a finding of negligence.

Appeal by plaintiff Wal-Mart Stores East, Inc. from order entered 4 January 2008 by Judge Clarence E. Horton, Jr. in Wake County Superior Court. Heard in the Court of Appeals 22 October 2008.

*Alston & Bird LLP, by Jasper L. Cummings, Jr. for plaintiff-appellant.*

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Kay Linn Miller Hobart, for defendant-appellee.*

*Wilson & Coffey, LLP by G. Gray Wilson and Stuart H. Russell for amicus curiae.*

STROUD, Judge.

Plaintiff Wal-Mart Stores East, Inc. appeals from an order entered 4 January 2008 granting summary judgment in favor of defendant. We affirm.

## I. Background

Viewed in the light most favorable to plaintiff, the evidence tended to show the following facts:[1]

Plaintiff Wal-Mart Stores East, Inc. ("W-M SEI") operates Wal-Mart retail stores in North Carolina and in 29 other states. At all times relevant to this action, plaintiff was wholly owned by Wal-Mart Stores, Inc. ("W-M SI"), a publicly traded corporation listed on the New York Stock Exchange.

At the beginning of 1996, all of the Wal-Mart stores in North Carolina operated by plaintiff during the tax years relevant to this appeal were owned and operated by W-M SI. In the fall of 1996 W-M SI reorganized its corporate structure. As a result of the corporate reorganization, plaintiff became the sole owner of WSE Management, LLC and WSE Investment, LLC. WSE Investment, LLC was the 99% owner and limited partner of Wal-Mart Stores East, LP. WSE Management, LLC was the 1% owner and general partner of Wal-Mart Stores East, LP. Wal-Mart Stores East, LP owned 100% of Wal-Mart Property Company ("W-M PC"). W-M PC owned all of the voting units of Wal-Mart Real Estate Business Trust ("W-M REBT"), a Delaware business trust with its principal place of business in Bentonville, Arkansas. On 31 October 1996 all real property pertaining to Wal-Mart store premises, including both freeholds and leaseholds, was transferred from W-M SI to W-M REBT.

On or about 31 January 1997, plaintiff entered into a ten-year agreement with W-M REBT to lease land and buildings owned by W-M REBT for plaintiff's store premises. The lease agreement included at least 12 store premises owned in fee by W-M REBT in North Carolina. Plaintiff also executed a sub-lease agreement with W-M REBT to sub-let store premises, including at least 70 store premises in North Carolina.

---

1. Plaintiff's statement of the facts in its brief was sketchy and at times argumentative. We admonish plaintiff's counsel to follow Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure in future cases before this Court:

> A full and complete statement of the facts [is required in an appellant's brief]. This should be a non-argumentative summary of all material facts underlying the matter in controversy which are necessary to understand all questions presented for review, supported by references to pages in the transcript of proceedings, the record on appeal, or exhibits, as the case may be.

N.C.R. App. P. 28(b)(5). We note that compliance with this rule is especially important when the Record on Appeal contains 2,531 pages and an additional stack of exhibits and transcripts standing approximately two feet tall.

Plaintiff filed a North Carolina Corporation Income Tax Return[2] for the tax year ended 31 January 1999 ("1998-99 Tax Return"), disclosing $3,173,869,445 in Total State Net Income. Total State Net Income included a deduction for $1,657,646,765 for rent paid to W-M REBT pursuant to the lease and sub-lease agreements noted above. From the $3,173,869,445 in Total State Net Income, plaintiff classified as nonbusiness income[3] and subtracted $1,270,259,076 that it re-

---

2. We were unable to locate copies of any of plaintiff's North Carolina Corporation Tax Returns in the 2,531 page Record on Appeal. However, all amounts from the tax returns relevant to this appeal were included in the workpapers prepared during the Secretary's audit of plaintiff. Plaintiff did not contest any of the amounts in the audit workpapers. The workpapers disclosed the following amounts for plaintiff for the tax year ended 31 January 1999 ("1998-99 Tax Year"), summarized in columnar format, rounded and expressed in millions (except for apportionment factors and tax payable):

| | | |
|---|---|---|
| Gross Profit | $ 18,946 | |
| Dividends from W-M PC | 1,270 | |
| Other Income | 148 | |
| Total Income | | $ 20,364 |
| Rent Expense | $ 1,658 | |
| Other Deductions | 15,532 | |
| Total Deductions | | 17,190 |
| Total State Net Income | | $ 3,174 |
| Less: Non-business Income | | $ 1,270 |
| Business Income | | $ 1,904 |
| Apportionment Factors | | 4.1625 % |
| Business Income Apportioned to N.C. | | $ 79.2 |
| Less Contributions to N.C. Donees | | .6 |
| Total Net Taxable Income | | $ 78.6 |
| Tax Payable at 7.25% (not rounded) | | $5,701,282 |

3. At the time plaintiff filed its 31 January 1999 Tax Return, multistate corporations operating in North Carolina divided income for tax purposes into business and nonbusiness income. N.C. Gen. Stat. § 105-130.4. Business income was apportioned and taxed among the several states in which the corporation operated, while nonbusiness income was "allocated in a manner whereby it [was] taxed only by the state with which the asset that generated the income [was] most closely associated[.]" *Polaroid Corp. v. Offerman*, 349 N.C. 290, 294, 507 S.E.2d 284, 288 (1998) (citing N.C. Gen. Stat. § 105-130.4(h) [(1997)], *cert. denied*, 526 U.S. 1098, 143 L. Ed. 2d 671 (1999).

Business income per N.C. Gen. Stat. § 105-130.4(a)(1) was redefined by the General Assembly on 30 September 2002, with effect on taxable years beginning on or after 1 January 2002, to mean "all income that is apportionable under the United States Constitution." 2002 N.C. Sess. Law 126 § 30G.1. The heading above § 30G.1 is "CLOSE CORPORATE TAX LOOPHOLES," which we construe as an attempt to keep the meaning of the statute the same but to foreclose a reading of the statute that might allow a corporation to avoid taxes properly due within the legislature's original intent. Section

ceived in dividends from W-M PC, to yield a total business income of $1,903,610,369. Of the total business income, 4.1625% was apportioned to North Carolina per N.C. Gen. Stat. § 105-130.4: $79,237,782. Plaintiff adjusted the apportioned amount for contributions to North Carolina donees, resulting in a Total Net Taxable Income of $78,638,377. On this Total Net Taxable Income, plaintiff calculated tax at 7.25% in the amount of $5,701,282.

W-M REBT filed a North Carolina Corporation Tax Return for the tax year ended 31 December 1998 ("1998 Tax Return"). On its 1998 Tax Return, W-M REBT reported total income of $1,208,178,874. From its total income, it deducted $1,207,831,069 for dividends paid to W-M PC, resulting in a net taxable income of $347,805. W-M REBT apportioned 3.1185% of this income to its business in North Carolina per N.C. Gen. Stat. § 105-130.4, resulting in Total Net Taxable Income of $10,846.[4] On this Total Net Taxable Income, W-M REBT calculated tax at 7.25% in the amount of $786. W-M PC did not file a corporation income tax return in the state of North Carolina for any of the years at issue in this appeal.

Defendant (or "the Secretary") audited plaintiff's tax return for the tax year ended 31 January 1999. As a result of the audit, defendant determined that the earnings of plaintiff must be combined with Wal-Mart Property Company and Wal-Mart Real Estate Business Trust in order to present true earnings in the State of North Carolina. Ac-

---

105-130.4(a)(1) was amended again 14 August 2003, with effect from that date, changing the term "business income" to "apportionable income," but keeping the same definition. 2003 N.C. Sess. Law 416 § 5.

4. W-M REBT's 31 December 1998 North Carolina Corporation Tax Return, summarized in columnar format, rounded and expressed in millions (except for apportionment factors and tax payable) disclosed the following amounts:

| | |
|---|---|
| Taxable Income Per Federal Return Before Special Deductions | $ 1,207.83 |
| Addition per N.C. Tax Code | .35 |
| Total Income | $ 1,208.18 |
| Dividends Paid Deduction (W-M PC) | $ 1,207.83 |
| Total State Net Income | $    0.35 |
| Apportionment Factors | 3.1185 % |
| Total Net Taxable Income | $    .01 |
| Tax Payable at 7.25% (not rounded) | $    786 |

cordingly, defendant prepared workpapers[5] showing an additional $4,183,704.00 tax payable by W-M SEI if the results of W-M SEI were combined with those of W-M PC and W-M REBT.

Based on the tax payable as calculated on the audit workpapers, on 14 April 2005 defendant issued a notice of proposed assessment pursuant to N.C. Gen. Stat. § 105-241.1 in the amount of $4,184,490.00[6] for the tax year ending 31 January 1999. Defendant further assessed interest of $1,675,694.77 and a penalty of $1,045,926.00.

Defendant also audited plaintiff's tax returns for the years ending 31 January 2000, 2001 and 2002.[7] As a result of those audits, defendant made similar adjustments, issuing notices of proposed assessments in the amounts of $4,847,198.00, $5,680,383.00, and $5,148,500.00 respectively. The proposed assessments for 2000, 2001, and 2002 also included interest of $1,552,583.51, $1,364,010.85, and $935,635.98 respectively and penalties of $1,211,608.25, $1,418,417.50, and $1,310,933.00 respectively.

On 2 May 2005, the Secretary notified plaintiff, pursuant to N.C. Gen. Stat. § 105-130.6, to file combined returns within 60 days to include W-M SEI, W-M PC and W-M REBT. There is no evidence in the record that plaintiff filed the combined returns, but on 12 May 2005, Wal-Mart Stores, Inc., plaintiff's sole owner, issued a check to the North Carolina Department of Revenue for $26,564,516.25 in payment of an assessment against W-M SI which is not at issue in this appeal; the assessment against plaintiff for the tax years ending 31 January 1999, 2000, and 2001; and an assessment against Sam's Club, the subject of related appeal No. COA08-453 for which an opinion will be filed simultaneously with this opinion.

On 17 March 2006 plaintiff filed a complaint pursuant to N.C. Gen. Stat. § 105-267 demanding refund of taxes paid. Plaintiff filed an amended complaint on or about 31 March 2006 to more fully set forth

---

5. On appeal, the only issues raised by defendant were purely legal questions, and the numerical amounts and the arithmetic underlying the notices of proposed assessment were uncontroverted.

6. The difference from the calculation in the workpapers ($4,184,490-$4,183,704) is the $786 shown as tax payable on the 1998 tax return of W-M REBT.

7. The appeal *sub judice* also includes plaintiff's tax years ended 31 January 2000, 31 January 2001, and 31 January 2002. The taxes payable for those tax years involve the same question of law, so we have not included the details of those numbers in the factual background.

its reasons for demanding refund in the amount $30,230,338.89.[8] The gravamen of the complaint was that defendant had no authority to force combination of plaintiff with W-M REBT and W-M PC for the purpose of reporting taxable income.

Plaintiff filed a motion for summary judgment on 1 September 2006. Defendant filed a cross-motion for summary judgment on 12 September 2007. An order granting defendant's motion for summary judgment was entered on 4 January 2008. Plaintiff appeals.

II. Standard of Review and Questions Presented

The standard of review for an order granting summary judgment is well established:

> The trial court must grant summary judgment upon a party's motion when there is no genuine issue as to any material fact and any party is entitled to a judgment as a matter of law. Summary judgment is appropriate if: (1) the non-moving party does not have a factual basis for each essential element of its claim; (2) the facts are not disputed and only a question of law remains; or (3) if the non-moving party is unable to overcome an affirmative defense offered by the moving party. On appeal, an order granting summary judgment is reviewed *de novo*, with the evidence in the record viewed in the light most favorable to the [non-moving party].

*Carter v. West Am. Ins. Co.*, 190 N.C. App. 532, 536, 661 S.E.2d 264, 268 (2008) (citation, quotation marks, ellipses and brackets in original omitted). In the instant appeal, there is no dispute about the material facts and only questions of law remain, making the case ripe for summary judgment.

Plaintiff presents three questions of law to this Court: (1) whether N.C. Gen. Stat. § 105-130.6 (or "the statute") provides defendant with authority to combine the three entities for the purpose of reporting taxable income, (2) whether, if Section 105-130.6 provides defendant with authority to combine the three entities for the purpose of reporting taxable income, the statute is unconstitutional, and (3) whether defendant's administration of Section 105-130.6 was unlawful.

---

8. The record does not reveal how plaintiff arrived at this exact number. In the "summary of material facts" attached to its order, the trial court rounded off the refund sought to "around $30 million."

### III. Statutory Authority to Combine

[1] Plaintiff's chief argument is that defendant had no statutory authority to combine the three entities for the purpose of reporting taxable income. The statute reads, in pertinent part:

> The net income of a corporation doing business in this State that is a parent, subsidiary, or affiliate of another corporation shall be determined by eliminating all payments to or charges by the parent, subsidiary, or affiliated corporation in excess of fair compensation in all intercompany transactions of any kind whatsoever. If the Secretary finds as a fact that a report by a corporation does not disclose the true earnings of the corporation on its business carried on in this State [("true earnings")], the Secretary may require the corporation to file a consolidated return of the entire operations of the parent corporation and of its subsidiaries and affiliates, including its own operations and income. The Secretary shall determine the true amount of net income earned by such corporation in this State.

N.C. Gen. Stat. § 105-130.6 (1999).[9]

Plaintiff argues that the first sentence of N.C. Gen. Stat. § 105-130.6 must be construed as a limit on the authority granted to the Secretary in the second sentence. Specifically, plaintiff argues that this construction is required because "true net income" or "true earnings" must be defined as "what the taxpayer's income would be if it had no affiliates and dealt with all parties on an arm's length basis[.]" Plaintiff reasons from this definition of true earnings "that, absent non-arm's length dealings, a company's separate return will accurately reflect its true earnings and neither adjustment nor forced combination are required to achieve the legislature's intent to tax entities on their true earnings." Plaintiff concludes therefrom that if its definition of true earnings is placed in the second sentence, and the second sentence of the statute is then read *in pari materia* with the first, the second sentence grants the Secretary authority to force combination *only* when he finds that there were intercompany payments in excess of fair value, but otherwise disallows forced combination. According to plaintiff, its proposed construction of the statute is supported by the "plain language of [the statute], [legislative his-

9. The statute was amended effective 1 January 1999 to its current form and controls three of the four tax years relevant to this appeal. The previous statute controls for plaintiff's 1998-99 tax return. The 1999 changes were immaterial for purposes of this appeal.

tory], the North Carolina case law and administrative practice, and persuasive authority from other states with similar statutes[.]".

Plaintiff further urges us to decide in its favor because "[p]rior to the trial court's decision in this case, no North Carolina court had ever held that related entities may be required to file a combined return if intercompany transactions are performed at arm's length." Assuming *arguendo* that this statement is true, it is not dispositive. Our research revealed no cases where this precise question was presented to a North Carolina appellate court, which would explain why no North Carolina court has answered it one way or the other. Accordingly, we conclude that this case presents a question of first impression.

A. The Language of the Statute

When this Court applies a statute duly passed by the General Assembly to a given set of facts:

> The paramount objective of statutory interpretation is to give effect to the intent of the legislature. The primary indicator of leg- islative intent is statutory language; the judiciary must give clear and unambiguous language its plain and definite meaning. However, strict literalism will not be applied to the point of pro- ducing absurd results.

*In Re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 560, 589 S.E.2d 179, 181 (2003) (citations and quotation marks omitted).

The language of the statute on its face does not limit the Secretary's authority to require combined reporting by mandating that he first find that the entity engaged in "non-arm's length deal- ings," that is, conducted intercompany transactions at amounts other than fair value. To the contrary, the language of the statute is broad, allowing the Secretary to require combined reporting if he finds as a fact that a report by a corporation does not disclose the true earnings of the corporation on its business carried on in this State. N.C. Gen. Stat. § 105-130.6. On its face, it does not restrict the Secretary to a finding of a particular type of transaction or dealing. *Id.*

B. Definition of True Earnings

Plaintiff's proposed definition of true earnings as "what the taxpayer's income would be if it had no affiliates and dealt with all parties on an arm's length basis" is crucial to its interpretation of

the statute. However, we reject plaintiff's proposed definition of true earnings.

If the definition of a word or phrase is not found in the statute, and the meaning of the word or phrase is not otherwise clear, we consider the meaning of the word or phrase in cases where the word or phrase has been defined. *See Duke Power Co. v. Clayton, Com'r of Revenue*, 274 N.C. 505, 513-14, 164 S.E.2d 289, 295 (1968) (relying on definitions in cases from the North Carolina Supreme Court, the United States Supreme Court and courts of other states to define a statutory term). Relevant *sub judice*, there is a line of cases from the United States Supreme Court which discusses the concept of "true earnings." *See Allied-Signal, Inc. v. Dir., Div. of Taxation*, 504 U.S. 768, 772-73, 119 L. Ed. 2d 533, 542 (1992) (discussing the concept of true earnings in a State and listing cases ); *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 436-37, 63 L. Ed. 2d 510, 520 (1980) (listing cases which discuss the concept of true earnings in a State).

The essential meaning of the phrase "true earnings" refers to the limit on state taxation found in the United States Constitution. *Allied-Signal*, 504 U.S. at 772, 119 L. Ed. 2d at 542. However, there are two very different methods for *calculating* true earnings: First, if the intrastate activities of an entity amount to a discrete business enterprise, the net income of that discrete business enterprise represents the true earnings in the State. *See id.* at 772, 119 L. Ed. 2d at 542 ("A State may not tax a nondomiciliary corporation's income if it is derived from unrelated business activity which constitutes a discrete business enterprise." (Citations, brackets and quotation marks omitted.)); *accord* N.C. Gen. Stat. § 105-130.6 (a discrete business enterprise is implied by the requirement of intercompany eliminations). However, if the entire enterprise is a unitary business, true earnings in the State may be calculated by apportioning the earnings of the entire enterprise on the basis of sales and other indicia of activity in the State. *Allied-Signal*, 504 U.S. at 772, 119 L. Ed. 2d at 542 ("[A] State need not attempt to isolate the intrastate income-producing activities from the rest of the business; it may tax an apportioned sum of the corporation's multistate business if the business is unitary."); *accord* N.C. Gen. Stat. § 105-130.4 (2007) (defining "apportionable income" as "all income that is apportionable under the United States Constitution" and setting forth the bases and factors for apportioning income).

It is important to note that in determining true earnings, "the form of business organization may have nothing to do with the underlying unity or diversity of business enterprise." *Mobil Oil*, 445 U.S. at 440, 63 L. Ed. 2d at 523. Functional integration is the key; whether the earnings are derived as divisional profits from a legally integrated enterprise or as dividends from a legally separate entity is of no consequence in determining if a business is unitary for the purposes of computing true earnings. *See id.* at 440-41, 63 L. Ed. 2d at 523.

If a taxpayer reports income based on the discrete enterprise method, then plaintiff is correct, absent any non-arm's length transactions the taxpayer's reported income will reflect its true earnings in the State. However, where a taxpayer's business is concededly unitary,[10] and where, as here, the taxpayer attempts to reclassify income as nonbusiness or nonapportionable, the reclassification has the potential to distort true earnings in North Carolina even if all intercompany transactions are accounted for at arm's length, or fair value, prices. *See Polaroid Corp. v. Offerman*, 349 N.C. 290, 293, 507 S.E.2d 284, 287-88 (1998) (overruling the taxpayer's attempt to classify money received in a patent lawsuit as nonapportionable). We therefore hold that plaintiff's proposed definition of true earnings is flawed because it is too narrow.

C. Statutory Construction

Where the language of a statute is not entirely clear, the basic principles of construction of tax statutes are well established:

> When the plain language of a statute proves unrevealing, a court may look to other indicia of legislative will, including: the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia*, the preamble, the title, and other like means. The intent of the General Assembly may also be gleaned from legislative history. Likewise, later statutory amendments provide useful evidence of the legislative intent guiding the prior version of the statute.

> Statutory provisions must be read in context: Parts of the same statute dealing with the same subject matter must be con-

---

10. As in *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 437, 63 L. Ed. 2d 510, 521 (1980), plaintiff *sub judice* "included all its operating income in apportionable net income, without regard to the locality in which it was earned." *Id.*

sidered and interpreted as a whole. Statutes dealing with the same subject matter must be construed *in pari materia*, as together constituting one law, and harmonized to give effect to each.

Tax statutes are to be strictly construed against the State and in favor of the taxpayer. In arriving at the true meaning of a taxation statute, the provision in question must be considered in its appropriate context within the Revenue Act.

*Proposed Assessments*, 161 N.C. App. at 560, 589 S.E.2d at 181 (citations, quotation marks and brackets omitted).

Plaintiff argues that the legislative history supports its proposed construction of the statute. Plaintiff cites *A Survey of Statutory Changes in North Carolina in 1941*, 19 N.C. L. Rev. 435, 534-35 (1941), as evidence of the legislative history of the enactment of the second sentence in the statute. Even if we accept plaintiff's contention that a contemporaneous commentary in a law review is persuasive as to legislative history and intent, the article cited offers no support to plaintiff.

Specifically, plaintiff argues that *A Survey of Statutory Changes*

interpreted the second sentence to continue to relate to the non-arm's length charges situation, but suggested that Defendant could force combination without having to find exactly which intercompany charges were excessive and by how much, if he found other evidence indicating non-arm's length charges (e.g., if a subsidiary consistently loses money).

However the actual language of *A Survey of Statutory Changes*, as opposed to plaintiff's paraphrase, characterizes the second sentence as an

attempt to determine the taxable income of the subsidiary by assigning it a reasonable portion of the consolidated net income of the system. . . . Particularly is this true when . . . over a long period of years the system as a whole has earned money while the subsidiary operating in this state, though doing a substantial business with the system and the public, has nominally earned none. . . . [T]he new provision [the second sentence of N.C. Gen. Stat. § 105-130.6] will . . . authorize consideration of the system's entire income *without finding any unfairness . . . in connection with specific intercompany transactions*.

19 N.C. L. Rev. at 534-35 (footnotes omitted and emphasis added). If we accord *A Survey of Statutory Changes* any weight at all in construction of the second sentence, it cuts directly *against* plaintiff's argument that the authority granted to the Secretary in the second sentence was limited to a finding of non-arms' length transactions which by definition are intercompany transactions not accounted for at fair value. In fact, the tax payable calculated by W-M REBT for 1998-99—$786 income tax payable in North Carolina on $1,208,178,874 in total net income when plaintiff operated at least 82 stores in North Carolina—is exactly the type of example noted in the article as a reason for enacting the second sentence of the statute.

D. North Carolina Case Law

Plaintiff further contends that its proposed construction of the statute is supported by "the North Carolina case law." Plaintiff cites two North Carolina cases in support of its position, *In re Clayton-Marcus Co.*, 286 N.C. 215, 210 S.E.2d 199 (1974), and *Polaroid Corp. v. Offerman*, 349 N.C. 290, 507 S.E.2d 284 (1998).

In *Clayton-Marcus*, the Court relied on the plain language of the statute and accordingly overruled the Secretary's attempt to assess additional tax by adding words to a statute defining property to be taxed. 286 N.C. at 222, 210 S.E.2d at 204. *Polaroid Corp. v. Offerman* upheld the Secretary's assessment of tax because the Secretary's proposed construction of the statute followed "general rules of grammar and syntax[,]" 349 N.C. at 301, 507 S.E.2d at 293, while the taxpayer's proposed construction required that the word "includes" be considered a "misplaced modifier," rather than a "compound predicate," 349 N.C. at 298, 507 S.E.2d at 290-91.

Neither case avails for plaintiff. Plaintiff would prevail only if we adopt a construction that adds words to the statute, or replaces words in the statute with a definition that we rejected in *supra* Part III.B., while the Secretary prevails if we apply the statute as written.

We further note that *Gulf Oil Corp. v. Clayton*, a case cited by plaintiff in another section of the brief is easily distinguishable from the case *sub judice* and thereby supports the Secretary's application of the statute. 267 N.C. 15, 147 S.E.2d 522 (1966). In *Gulf Oil*, the North Carolina Supreme Court held that the Secretary had incorrectly combined the income of subsidiaries, in the form of dividends, with the income of the parent company. 267 N.C. at 24-25, 147 S.E.2d at 529. In so holding, the Supreme Court recited the following facts:

None of the [four] subsidiary corporations . . . were domesticated in North Carolina, or owned property here, and none conducted any business activities within the State. Business transactions between them and plaintiff . . . *were [all] conducted at fair market value, i.e.*, no benefit innured [sic] to plaintiff by reason of the corporate kinship. *No products from any of the [four] subsidiaries ever had any connection whatever with North Carolina.* The earnings which produced the dividends which the subsidiaries paid plaintiff were all subject to taxation elsewhere, *i.e.*, in Kuwait, Iran, Italy and Canada, respectively. The net income of each subsidiary is shown on separate books and records of accounts maintained by each entirely outside of North Carolina. There is no interchange or sharing of patents or trademarks between them and plaintiff. Each subsidiary paid its pro rata share of the cost of every service which plaintiff or any other subsidiary performed for it.

*Gulf Oil*, 267 N.C. at 18, 147 S.E.2d at 524-25 (emphasis added). Combination was improper in *Gulf Oil* because the intercompany transactions were all conducted at fair value (arm's length) *and* none of the combined entities "*had any connection whatever with North Carolina.*" *Id.*

To the contrary, in the case *sub judice*, W-M REBT owned and leased stores within North Carolina, passed along income to W-M PC received from leasing and sub-leasing those stores, which W-M PC further passed along to plaintiff in the form of dividends. This was a connection of the three combined subsidiaries with North Carolina which distinguishes this case from *Gulf Oil*. Plaintiff's argument that its proposed construction of the statute is supported by North Carolina case law is without merit.

E. Authority from Other Jurisdictions

Plaintiff cites a case from Massachusetts, *Polaroid Corp. v. Commissioner of Revenue*, 472 N.E.2d 259 (Mass. 1984), and a case from Georgia, *Blackmon v. Campbell Sales Company*, 189 S.E.2d 474 (Ga. App. 1972), as persuasive authority to support its proposed construction of the statute. While "decisions [from other states] construing [similar] statutes are somewhat indicative of the general legislative purpose in the enactment of a . . . tax[,]" *Clayton-Marcus*, 286 N.C. at 225, 210 S.E.2d at 206, the cases cited by plaintiff from other states have very little persuasive weight *sub judice*. As discussed in more detail below, the statutes in both states were materially differ-

**WAL-MART STORES E., INC. v. HINTON**

[197 N.C. App. 30 (2009)]

ent from the North Carolina statute, and the interpretation of the Massachusetts statute was based on legal grounds which do not exist in North Carolina.[11]

The Georgia statute interpreted in *Blackmon* read:

The net income of a domestic or foreign corporation which is a subsidiary of another corporation or closely affiliated therewith by stock ownership shall be determined by eliminating all payments to the parent corporation or affiliated corporation in excess of fair value, and by including fair compensation to such domestic business corporation for its commodities sold to or services performed for the parent corporation or affiliated corporation. For the purposes of determining such net income the Commissioner may equitably determine such net income by reasonable rules of apportionment of the combined income of the subsidiary, its parent and affiliates or any thereof.

189 S.E.2d at 476 (quoting Code § 92-3113(6), Ga.L.1950, pp. 299, 300). Despite plaintiff's contention that this statute is "the Georgia analog to N.C. Gen. Stat. § 105-130.6," the Georgia statute *lacks any language at all* authorizing the Georgia tax commissioner to require combination upon a finding that a taxpayer's return "does not disclose the true earnings of the corporation on its business carried on in this State[.]" N.C. Gen. Stat. § 105-130.6. The omission of similar language is fatal to plaintiff's contention that *Blackmon* is persuasive.

The Massachusetts statute interpreted by *Polaroid v. Commissioner* contains language almost identical to the Georgia statute, except that the Massachusetts statute adds language referring to federal consolidated returns not relevant *sub judice*. 472 N.E.2d at 264 n.9 (discussing the similarity of the Georgia statute with the Massachusetts statute). Further, *Polaroid v. Commissioner's* interpretation of the Massachusetts statute[12] rested entirely on the fact

---

11. We note that the facts and result of both the Georgia case and the Massachusetts case are very similar to *Gulf Oil*, in that the tax commissioner in each of the respective states was prevented from combining discrete entities that had no connection to the taxing state. *Gulf Oil* was distinguished from the case *sub judice supra* Part III.D.

12. It appears that *Polaroid v. Commissioner's* construction of the Massachusetts statute is mere *dicta*, because the case was disposed of on the grounds that the Commissioner of Revenue had not issued relevant regulations beforehand. *Polaroid Corp. v. Commissioner of Revenue*, 472 N.E.2d 259, 261 (Mass. 1984). However, even if *Polaroid v. Commissioner's* interpretation of the statute had been dispositive in Massachusetts, it would only be persuasive, not controlling, in North Carolina.

that when the Massachusetts statute was passed in 1933, the Massachusetts Supreme Court had determined that the unitary method of assessment violated the United States Constitution. 472 N.E.2d at 265-66 (citing *Commissioner of Corps. & Taxation v. J.G. McCrory Co.*, 182 N.E. 481 (Mass. 1932)). However, by 1920 the *United States* Supreme Court had already determined that the unitary method of assessment did not violate the United States Constitution. *Allied-Signal*, 504 U.S. at 779-80, 119 L. Ed. 2d at 547 (citing *Underwood Typewriter Co. v. Chamberlain*, 254 U.S. 113, 120-21, 65 L. Ed. 165 (1920)). Furthermore, plaintiff did not cite any cases, and we found none, where the North Carolina Supreme Court has ever deemed the unitary method to be constitutionally infirm. Therefore, *Polaroid v. Commissioner's* reasoning is wholly inapplicable *sub judice*.

To the extent that cases from other jurisdictions are relevant in determining legislative intent, the Secretary's interpretation of the statute is supported by the opinion of the United States Supreme Court in *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 63 L. Ed. 2d 510, 520 (1980). In *Mobil Oil*, as here, the taxpayer classified as "non apportionable" certain dividends received from its corporate subsidiaries and subtracted those dividends from its apportionable taxable income in the state of Vermont. *Id.* at 430, 63 L. Ed. 2d at 517. The Vermont tax commissioner reversed the taxpayer, and added those dividends back to apportionable taxable income. *Id.* at 431, 63 L. Ed. 2d at 517. On appeal, the United States Supreme Court upheld the Commissioner of Taxes. *Id.* at 449, 63 L. Ed. 2d at 528.

*Mobil Oil* noted that "in its Vermont tax returns for the years in question, Mobil included all its operating income in apportionable net income, without regard to the locality in which it was earned." *Id.* at 437, 63 L. Ed. 2d at 521. *Mobil Oil* opined that "[t]o carve [dividends received from subsidiaries and affiliates] out as an exception [from inclusion in apportionable net income, the taxpayer] must demonstrate something about the nature of this income that distinguishes it from operating income, a proper portion of which the State concededly may tax." *Id.* at 437-38, 63 L. Ed. 2d at 521. *Mobil Oil* further opined that in order to re-classify income as non-apportionable, the taxpayer "must show . . . that the income was earned in the course of activities unrelated to the sale of [its] products in that State." *Id.* at 439, 63 L. Ed. 2d at 522. In other words, the burden is on the taxpayer to demonstrate that its "subsidiaries and affiliates are distinct in any business or economic sense from its . . . sales activities in [the taxing

State]." *Id.* at 439, 63 L. Ed. 2d at 522. Therefore, "[i]n the absence of any proof of discrete business enterprise, [the Commissioner of Taxes] was entitled to conclude that the dividend income's foreign source did not destroy the requisite nexus with in-state activities." *Id.* at 439-40, 63 L. Ed. 2d at 522. Plaintiff has not shown that the dividends received from W-M PC are in any way part of a discrete business. It is undisputed that W-M REBT owns the physical premises which plaintiff rents to operate its stores in North Carolina and that rent from those store premises transferred from W-M REBT to W-M PC in the form of dividends is a significant part of the income of W-M PC. As in *Mobil Oil*, and distinct from *Gulf Oil*, as discussed in *supra* Part III.D, W-M REBT, W-M PC and plaintiff form a unitary business. The Secretary was properly allowed to combine the returns of those businesses if he found that plaintiff's return did not disclose its true earnings on its North Carolina business activity. In sum, to the extent that authority from other jurisdictions helps us construe the statute, it weighs in favor of the Secretary and against plaintiff. This argument is overruled.

## IV. Constitutionality

**[2]** Plaintiff argues that if the statute authorizes combination in the case *sub judice*, then the assessments based on that combination were unconstitutional. Plaintiff specifically argues that the assessments violated (1) the prohibition on retroactive taxation in article I, section 16 of the North Carolina Constitution; (2) the Due Process Clause of the United States Constitution; (3) the tax uniformity requirements of article V, section 2(2) of the North Carolina Constitution; (4) "the Commerce Clause of the U.S. Constitution because Defendant only forces combination of foreign multistate corporations[;]" and (5) the requirement that the income taxes be assessed on net income found in article 4, section 2(6) of the North Carolina Constitution by denying a deduction for rent paid. We consider each of these issues in turn.

### A. Retroactive Taxation

Plaintiff argues that the assessments violated article I, section 16[13] of the North Carolina Constitution because "[d]efendant's assessments were not based on any facially applicable statute or interpretation published by [d]efendant that could be reasonably

---

13. "No law taxing retrospectively sales, purchases, or other acts previously done shall be enacted." N.C. Const. art. I, § 16.

applied to these facts . . . ." The applicable regulation at the time plaintiff filed its 1998-99 Tax Return stated,

> The business income of the taxpayer is that portion of the taxpayer's entire income which arises from the conduct of the taxpayer's trade or business operations. For purposes of administration of G.S. 105-130.4, *the income of the taxpayer is business income unless classified as nonbusiness income* under the law and these Rules.

17 N.C.A.C. § 5C.0702 (1998) (emphasis added) (repealed effective 1 July 2000). The regulations further stated:

> The *classification* of income by the labels customarily given them, such as interest, rents, royalties, or capital gains, *is of no aid* in determining whether that income is business or nonbusiness income. . . . Rental income from real or tangible personal property constitutes business income when the rental of the property is a principal business activity of the taxpayer or the rental of the property is related to or incidental to the taxpayer's principal business activity.

17 N.C.A.C. § 5C.0703 (1998) (emphasis added).

Even though 17 N.C.A.C. § 5C.0703 also stated that "[d]ividend income is business income when dealing in securities is a principal business activity of the taxpayer [but o]ther dividends are nonbusiness income[,]" it is an elementary principle of taxation law that the label attached to a transaction or balance is of no importance. *See Mobil Oil*, 445 U.S. at 441, 63 L. Ed. 2d at 523 ("Transforming . . . income into dividends from legally separate entities works no change in the underlying economic realities of a unitary business[.]"). It is clear that the amount plaintiff sought to classify as "dividends" was in actual fact rental income. Since more than one-third of plaintiff's total income on its 1998-99 Tax Return was derived from rental of its store properties, there can hardly be any dispute that the rental income, as stated in the regulation, was "a principal business activity of the taxpayer[.]" 17 N.C.A.C. § 5C.0703 (1998).

Furthermore, after 17 N.C.A.C. § 5C.0702 was repealed and 17 N.C.A.C. § 5C.0703 was amended, both effective 1 July 2000, the regulations spoke to plaintiff's situation with even more clarity: "Income is business income unless it is clearly classifiable as nonbusiness income. *A taxpayer must establish that its classification of income as nonbusiness income is proper.* . . . Dividend income is business

income if . . . [t]he dividend is received from a unitary subsidiary of the taxpayer. 17 N.C.A.C. § 5C.0703 (2000) (emphasis added) (published 15 February 2000 in 14 N.C. Reg. 1431, effective 1 July 2000). The argument that "[d]efendant's assessments were not based on any facially applicable statute or interpretation" is without merit.

B. Delegation of Legislative Responsibilities

Plaintiff cites *Harvell v. Scheidt,* 249 N.C. 699, 107 S.E.2d 549 (1959), to contend that "[d]efendant did not determine the assessments by any constitutionally sufficient standard in the General Statutes and thereby violated the North Carolina Constitution, Article 1 [sic], sec. 6 and Article V, sec. 2(2)." The question presented in *Harvell* was "whether or not the authority granted to the Commissioner of Motor Vehicles by the General Assembly . . . constitute[d] an unconstitutional delegation of legislative power." 249 N.C. at 701-02, 107 S.E.2d at 550. In *Harvell,* the legislature had given the Department of Motor Vehicles ("DMV") the authority, without a preliminary hearing, to suspend the driver's license of a "habitual violator of the traffic laws" and had also given the DMV sole discretion to define the meaning of "habitual violator" by reference to "the number and character of such violations of the traffic laws and the period of time during which such violations may have occurred[.]" 249 N.C. at 702, 107 S.E.2d at 551.

"Where [certain] power[s are] left to the unlimited discretion of a board, to be exercised without the guide of legislative standards, the statute . . . must be regarded as an attempted delegation of the legislative function offensive both to the State and the Federal Constitution." *State v. Harris,* 216 N.C. 746, 754, 6 S.E.2d 854, 860 (1940) (declaring unconstitutional on the grounds of improper delegation of legislative responsibilities a statute granting an administrative agency unlimited discretion to set licensing requirements for dry cleaners). On the other hand,

> [w]hen there is an obvious need for expertise in the achievement of legislative goals the General Assembly is not required to lay down a detailed agenda covering every conceivable problem which might arise in the implementation of the legislation. It is enough if general policies and standards have been articulated which are sufficient to provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances.

*Adams v. North Carolina Dept. of Natural and Economic Resources,* 295 N.C. 683, 698, 249 S.E.2d 402, 411 (1978) (holding the statute authorizing the Coastal Resources Commission to be sufficiently specific).

The case *sub judice* is more like *Adams* than *Harvell.* The need for expertise in the implementation of income tax law for assessment and collection of all taxes legally due is obvious.[14] Unlike *"Harvell,* [where] it would have been a simple matter for the General Assembly to define an 'habitual violator of the traffic laws' rather than leaving the definition to the Commissioner of Motor Vehicles[,]" *Farlow v. North Carolina State Bd. of Chiropractic Examiners,* 76 N.C. App. 202, 213, 332 S.E.2d 696, 703, *disc. review denied and appeal dismissed,* 314 N.C. 664, 336 S.E.2d 621 (1985), "it would be virtually impossible for the General Assembly to define all possible" accounting and business configurations by which taxpayers endeavor to minimize taxes payable. 76 N.C. App. at 213, 332 S.E.2d at 703. Consequently, "[s]ome discretion ha[d] to be left" to the Secretary, *id.,* which the General Assembly did leave when it granted the Secretary discretionary authority to force combination of entities on a finding that a report does not disclose true earnings in North Carolina. N.C. Gen. Stat. § 105-130.6.

Furthermore, the authority given to the Secretary in Section 105-130.6 was not without sufficient direction. Contrary to plaintiff's assertion, true earnings attributable to income earned in North Carolina is not an uncertain or ambiguous concept. As the United States Supreme Court has said in explaining the "true earnings" concept:

> Because of the complications and uncertainties in allocating the income of multistate businesses to the several States, we permit States to tax a corporation on an *apportionable* share of the multistate business carried on in part in the taxing State. That is

---

14. As was well put by Judge Learned Hand:

[T]he words of . . . the Income Tax [Act], for example, merely dance before my eyes in a meaningless procession: cross-reference to cross-reference, exception upon exception—couched in abstract terms that offer no handle to seize hold of— leave in my mind only a confused sense of some vitally important but successfully concealed, purport . . . . I know that these monsters are the result of fabulous industry and ingenuity, plugging up this hole and casting out that net, against all possible evasion[.]

*A.O. Smith v. United States,* 691 F.2d 1220, 1223 (7th Cir. 1982) (Dumbauld, J., dissenting) (quoting Irving Dilliard (ed.), *The Spirit of Liberty: Papers and Addresses of Learned Hand* (2nd ed. 1953) 213).

the unitary business principle. *It is not a novel construct*, but one that we approved within a short time after the passage of the Fourteenth Amendment's Due Process Clause.

*Allied-Signal*, 504 U.S. at 778, 119 L. Ed. 2d at 546 (emphasis added); *see also supra* Part III.B. (discussing the meaning of true earnings). Accordingly, we hold that true earnings "is a sufficiently definite standard so that the [Secretary] may set policies within it without exercising a legislative function." *Farlow*, 76 N.C. App. at 213, 332 S.E.2d at 703. This argument is overruled.

C. Uniform Taxation

Plaintiff next contends that:

The assessments violated the tax uniformity requirement of the North Carolina Constitution, Article V, sec. 2(2) and the U.S. Constitution Equal Protection Clause of the Fourteenth Amendment. Specifically, taxpayers with affiliated Real Estate Investment Trusts have presumably paid tax as separate corporations as required by the statutes except when Defendant audits them and forces combination, which he did not do in all such cases, thus treating Plaintiff differently from similarly situated taxpayers. . . . [I]t can be assumed that other taxpayers simply followed that law (i.e., filed on separate company basis), as did Plaintiff.

Plaintiff contends that *Edward Valves, Inc. v. Wake County*, 117 N.C. App. 484, 451 S.E.2d 641 (1995), *modified and aff'd on other grounds*, 343 N.C. 426, 471 S.E.2d 342 (1996), *cert. denied*, 519 U.S. 1112, 136 L. Ed. 2d 839 (1997), controls this case because two statements appearing in the record as admissions by the Secretary provide evidence of non-uniform taxation: (1) "Defendant has not assessed additional taxes based on requiring a combination of a corporate taxpayer with a[n] affiliated REIT in every case in which he audited corporate taxpayers that had affiliated REIT's for all of the years 1998-2002[;]" and (2) "[A]t the September 5, 2006 meeting of the North Carolina General Assembly's Revenue Laws Study Committee, Greg Radford stated that the North Carolina Department of Revenue cannot audit all inter-company transactions between related companies, one or more of which is doing business in North Carolina."

However, this case is distinguishable from *Edward Valves*. In *Edward Valves*, the record showed, and the County admitted, that no effort was made in the County's enforcement procedures to require

taxpayers to list certain types of intangible property for tax assessment purposes. 117 N.C. App. at 491-92, 451 S.E.2d at 646-47. This Court held that this "purposeful, though somewhat informal, classification based upon an improper distinction between taxpayers who owned the same class of property" violated the legal requirement of uniformity in taxation. 117· N.C. App. at 492, 451 S.E.2d at 647. However, we do not agree that the first admission by the Secretary quoted above amounts to "improper distinction" between similarly situated taxpayers. For example, it is entirely possible that the affiliated REIT in another audited company would not form part of a unitary business, as was the case *sub judice*, so that the Secretary would be constitutionally disallowed from assessing additional taxes, *see supra* Part III.B. It is also entirely possible that another corporation owning an affiliated REIT would not try to minimize North Carolina income taxes by reclassifying REIT dividends as nonbusiness or non-apportionable. In other words, it may not have been possible or necessary for the Secretary to assess taxes after every audit of a corporation owning a REIT. Accordingly, the Secretary's statement is not equivalent to the County's "purposeful, though informal classification based upon an improper distinction" in *Edward Valves. Id.* at 492, 451 S.E.2d at 647.

As to the second admission, that it is not possible for the Secretary to audit all corporations with intercompany transactions, the North Carolina Supreme Court has held that "[t]he rule of equality [in taxation] permits many practical inequalities. And necessarily so. What satisfies this equality has not been, and probably never can be, precisely defined." *Leonard v. Maxwell*, 216 N.C. 89, 94, 3 S.E.2d 316, 321 (1939) (citation, quotation marks and ellipses omitted). The Fifth Circuit Court of Appeals further opined that:

> It is inherent in any voluntary system of taxation that there will be those who, knowingly or not, fail to file the required tax returns. The fact that all taxpayers or all areas of the tax law cannot be dealt with by the Internal Revenue Service with equal vigor and that there thus may be some taxpayers who avoid paying the tax cannot serve to release all other taxpayers from their obligation. As this court said in *Kehaya v. United States*, 355 F.2d 639, 641, 174 Ct.Cl. 74, 78 (1966): "The Commissioner's failure to assess deficiencies against some taxpayers who owe additional tax does not preclude him from assessing deficiencies against other taxpayers who admittedly owe additional taxes on the same type of income. . . . "

*Austin v. United States*, 611 F.2d 117, 119-20 (5th Cir. 1980) (quoting *Wagner v. United States*, 387 F.2d 966, 972 (Ct.Cl. 1967); *see also Galveston by Galveston Wharves v. United States*, 33 Fed. Cl. 685, 707-08 (1995) ("The mere fact that another taxpayer has been treated differently from the plaintiff does not establish the plaintiff's entitlement. . . . A taxpayer cannot premise its right to an exemption by showing that others have been treated more generously, leniently or even erroneously by the IRS." (Internal footnotes omitted.)), *aff'd*, 82 F.3d 433 (1996). This argument is without merit.

D. Commerce Clause

Plaintiff argues that "[t]he assessments violated the Commerce Clause of the U. S. Constitution because Defendant only forces combination of foreign multistate corporations." However, plaintiff cites nothing in the factual record, and we find nothing, in support of this assertion. Accordingly, this argument is dismissed.

E. Tax on Net Income

Next, plaintiff, citing *Atlantic Coast Line v. Daughton*, 262 U.S. 413, 67 L. Ed. 1051 (1923), contends that the assessments violated the North Carolina Constitution, article V, section 2(6) "by denying a deduction for rent paid and thus not taxing Plaintiff's net income." Defining "net income" for the purpose of applying N.C. Const. art. V, sec. 2(6), appears to be a question of first impression.

Plaintiff contends that *Atlantic Coast Line* supports its position because according to plaintiff's characterization of the case, "only because the tax was on property income rather than a taxpayer's entire income was rent deduction not required on the facts of that case." We disagree with plaintiff's characterization of *Atlantic Coast Line* and his general conclusion that denying a particular type of deduction violates article V, section 2(6) of the North Carolina Constition.

In *Atlantic Coast Line*, 262 U.S. at 424, 67 L. Ed. at 1061, a tax was contended to be in violation of a now superseded constitutional provision[15] similar to the current article V, section 2(6), which requires "there shall be allowed personal exemptions and deduc-

---

15. The United States Supreme Court passed on this North Carolina constitutional question because "the cases are properly here on federal questions, [therefore] all questions presented by the record, whether involving federal law or state law, must be considered." *Atlantic Coast Line v. Daughton*, 262 U.S. 413, 416, 67 L. Ed. 1051, 1058 (1923).

tions so that only net incomes are taxed." However, in deciding *Atlantic Coast Line*, the United States Supreme Court made clear that the dispute in that case was not what particular items made up "net income," but on which particular entity net income should be calculated. 262 U.S. at 420-21, 67 L. Ed. at 1059-60. In the Court's own words:

> The differences between the parties arise, in the main, *not from difference in the method of determining what is net income*, but from difference as to what is the subject of the tax. In other words, they differ as to the thing of which the net income is to be ascertained. . . . The question of law thus presented is not one which involves enquiry into the intricacies of railroad accounting.

*Id.* (emphasis added). *Atlantic Coast Line* further acknowleged that

> [t]he term "net income," in law or in economics, has not a rigid meaning. Every income tax act necessarily defines what is included in gross income; what deductions are to be made from the gross to ascertain net income; and what part, if any, of the net income, is exempt from taxation. These details are largely a matter of governmental policy.

262 U.S. at 422, 67 L. Ed. at 1060 n.6; *accord Anderson v. Forty-Two Broadway Co.*, 239 U.S. 69, 72, 60 L. Ed. 152, 154 (1915) ("There was error, as it seems to us, in seeking a theoretically accurate definition of 'net income,' instead of adopting the meaning which is so clearly defined in the [Corporation Tax] Act itself.").

*Atlantic Coast Line* in no way stands for the proposition that a deduction must be allowed for rental expense if an income tax law is to pass muster under the North Carolina Constitution. To the contrary, *Atlantic Coast Line's* view that the particular deductions allowed from gross income is "largely a matter of governmental policy[,]" 262 U.S. at 422, 67 L. Ed. at 1060 n.6, was tacticly supported by the North Carolina Supreme Court in *Aronov v. Secretary of Revenue*, 323 N.C. 132, 371 S.E.2d 468 (1988), *cert. denied*, 489 U.S. 1096, 103 L. Ed. 2d 935 (1989). While *Aronov* admittedly interpreted a statute and not the North Carolina Constitution, *Aronov* declared: "Deductions, such as that authorized in N.C.G.S. § 105-147(9)(d)(2), are in the nature of exemptions: they are privileges, not rights, and are allowed as a matter of legislative grace." 323 N.C. at 140, 371 S.E.2d at 472 (citation omitted). This Court has similarly held: "A taxpayer claiming a deduction must bring himself within the statutory

provisions authorizing the deduction." *Ward v. Clayton*, 5 N.C. App. 53, 58, 167 S.E.2d 808, 811 (1969), *aff'd*, 276 N.C. 411, 172 S.E.2d 531 (1970).

From these cases, we reason that article V, section 2(6) does not require any particular deduction from gross income to be allowed in calculating "net" income. Rather, we conclude that while article V, section 2(6) requires deductions and allows only net income to be taxed, it implicitly recognizes the authority of the General Assembly to determine what deductions from gross income are properly allowed in the computation of net income. This argument is overruled.

## V. Administration of the Statute

### A. *Ad Hoc* Rule-Making

One of the sub-subsections in plaintiff's argument that the statute did not give the Secretary authorization to combine the three entities is headed: "Without the Arm's Length Standard, [the Secretary] would Need to Engage in Improper *Ad Hoc* Rule-Making." In that sub-subsection, plaintiff contends that defendant engaged in "*ad hoc* rule-making with no ascertainable standard[,]" citing *National Service Industries v. Powers*, 98 N.C. App. 504, 391 S.E.2d 509 (1990), *appeal dismissed and disc. review denied*, 327 N.C. 431, 395 S.E.2d 685 (1990), and that "[a]dministrative rule-making is proper only when the statute provides 'proper standards' to 'check' the agency and to inform the public of punishable conduct[,]" citing *In re Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989). Plaintiff further contends

> [w]hile flexibility for *ad hoc* rule[-]making can be necessary to deal with problems not reasonably foreseeable, that is clearly not the situation here because Defendant did not act under a reasonably circumscribed grant of authority that was applicable to cases such as this. . . . Defendant concealed [his criteria for combination], which is not one of the reasons recognized [in *Com'r of Insurance v. N.C. Rate Bureau*, 300 N.C. 381, 269 S.E.2d 547 (1980)] to justify *ad hoc* rule[-]making.

It appears that plaintiff has conflated two distinct and different legal concepts: (1) whether the General Assembly unconstitutionally delegated its legislative authority without clear guidelines, *see Charlotte-Mecklenburg Hosp. Auth. v. N. C. Industrial Comm.*, 336 N.C. 200, 221, 443 S.E.2d 716, 728-29 (1994) (holding that the Industrial Commission was not given authority by the legislature to

"set 'reasonable' hospital rates at or below the prevailing community charge"); *see Harris*, 216 N.C. at 754, 6 S.E.2d at 860 (statute granting administrative agency unlimited discretion to set licensing requirements for dry cleaners was an unconstitutional delegation of legislative authority), or (2) whether, pursuant to a constitutionally sufficient grant of authority, the Secretary set forth a rule *ad hoc* without following the statutory procedures for rule-making required by the Administrative Procedure Act ("APA"). *See Com'r of Insurance v. N.C. Rate Bureau*, 300 N.C. 381, 413, 269 S.E.2d 547, 569 (1980) ("The Commissioner correctly argues that [even when the APA otherwise applies,] a second mode by which administrative agencies can establish rules is through the case-by-case process of [*ad hoc*] administrative adjudication.") We discussed the first concept when we addressed plaintiff's other constitutional arguments *supra* Part IV.B. We will address the second concept here.

The Revenue Act authorizes the Secretary to "adopt rules needed to administer a tax collected by the Secretary" and provides that the APA, specifically, N.C. Gen. Stat. § "150B-1 and Article 2A of Chapter 150B of the General Statutes set[s] out the procedure for the adoption of rules by the Secretary." N.C. Gen. Stat. § 105-262 (2005). The APA defines "Rule" as "any agency regulation, standard, or statement of *general applicability* that implements or interprets an enactment of the General Assembly or Congress or a regulation adopted by a federal agency or that describes the procedure or practice requirements of an agency." N.C. Gen. Stat. § 150B-2(8a) (2005) (emphasis added).

The Revenue Act, as plaintiff points out, forbids related corporations from "fil[ing] a consolidated return with the Secretary of Revenue, unless specifically directed to do so in writing by the Secretary[.]" N.C. Gen. Stat. § 105-130.14 (2007). Because the filing of a consolidated (or combined) return is exceptional, and not allowed unless specifically required, we conclude the Secretary's decision to combine plaintiff's financial results with its related corporations is not and could not have been a standard of "general applicability" as described in the APA, and is therefore by definition not a "Rule."

Accordingly, we hold the Secretary was not required to follow the formal rule-making procedures in Chapter 150B in order to make this determination. *See N.C. Comm'r of Labor v. Weekley Homes, L.P.*, 169 N.C. App. 17, 31, 609 S.E.2d 407, 417 (2005) ("[T]he Operations Manual is a non-binding interpretive statement, not a

rule requiring formal rule-making procedures." (Citing N.C. Gen. Stat. § 150B-2(8a)(c))). This argument is without merit.

## B. Defendant's History

Plaintiff heads a subsection in its argument that the statute did not give the Secretary authorization to combine the three entities thusly: "This Case Represents Another One of Defendant's Several Attempts to Exceed Statutory Authority[.]" In this subsection, plaintiff cites several cases lost by defendant over the last eighty years to argue that

> [t]his case . . . represents another unlawful attempt to manipulate statutes with long-understood meaning to impose tax liability where none would otherwise exist. . . . So long as the General Assembly sits, there is no need for Defendant to invent new laws to tax corporations employing organizational structures that displease the Defendant.

However, plaintiff has failed to show this Court how the cases cited compel a result in its favor in this case. Plaintiff points us to no material factual similarities from those cases to this one other than the fact that each case is about the amount of income properly reportable as taxable. This argument is also without merit.

## VI. Penalties

[3] Finally, plaintiff argues:

> Defendant assessed substantial penalties under G.S. 105-236(a)(5) entitled "Negligence." The penalties were for Plaintiff's allegedly negligent behavior in filing its returns. . . . The penalties were levied at 25% of the assessed tax, rather than 10%, due to the large size of the assessments. But Plaintiff was not negligent in the original filings because those filings were made on a separate company basis, just as the statute explicitly requires; combined returns, as noted above, can only be filed when specifically requested by Defendant. . . . Therefore, Plaintiff's conduct in reporting their [sic] income could not have been negligent, and the penalties are not applicable.

> This Court should contrast the treatment of Plaintiff with that of the taxpayers in . . . [an]other . . . corporate income tax case . . . .

We disagree.

N.C. Gen. Stat. § 105-236 reads, in pertinent part:

(5) Negligence.—

a. Finding of negligence.—For negligent failure to comply with any of the provisions to which this Article applies, or rules issued pursuant thereto, without intent to defraud, the Secretary shall assess a penalty equal to ten percent (10%) of the deficiency due to the negligence.

. . . .

c. Other large tax deficiency.—In the case of a tax other than individual income tax, if a taxpayer understates tax liability by twenty-five percent (25%) or more, the Secretary shall assess a penalty equal to twenty-five percent (25%) of the deficiency.

N.C. Gen. Stat. § 105-236(a)(5) (2003).

Plaintiff correctly notes that subsubsection (a)(5) is entitled "Negligence." However, the title is somewhat misleading, and "[t]he law is clear that captions of a statute cannot control when the text is clear." *In re Forsyth County*, 285 N.C. 64, 71, 203 S.E.2d 51, 55 (1974).

In the case *sub judice*, penalties were assessed under N.C. Gen. Stat. § 105-236(a)(5)(c), which does not require a finding of negligence as is necessary under N.C. Gen. Stat. § 105-236(a)(5)(a). Plaintiff does not appear to dispute that if the Secretary's assessment based on the combined returns is lawful, then plaintiff's income was understated by more than 25%, which operates to invoke the penalty provision of N.C. Gen. Stat. § 105-236(a)(5)(a) without a finding of negligence.

We determined above that the Secretary's assessment based on the combined returns was indeed lawful. Furthermore, as specifically discussed in *supra* Part IV.C, a taxpayer cannot establish its claim based solely on the treatment of other taxpayers. Accordingly, the penalty assessed against plaintiff is affirmed.

VII. Conclusion

The Secretary acted within his lawful authority when he assessed additional taxes against plaintiff as a result of the combination of plaintiff with two related entities. Judgment is affirmed with respect to the assessment of additional taxes and interest thereon.

Furthermore, plaintiff understated its taxable income by more than 25%. Accordingly, the penalties assessed are also affirmed.

AFFIRMED.

Judges STEELMAN and JACKSON concur.