DELHAIZE AMERICA, INC., Plaintiff v. KENNETH R. LAY, Secretary of Revenue of
the State of North Carolina, Defendant

No. COA11-868

(Filed 21 August 2012)

**1. Taxation—combined corporate earnings—changes in guide-
lines—no due process violation**

The trial court did not err by concluding that defendant
Secretary of Revenue did not violate plaintiff's procedural due
process rights by forcing a combination of plaintiff and FL Food
Lion, Inc., pursuant to N.C.G.S. §. 105-130.6, for tax purposes.
Plaintiff, formerly known as Food Lion, Inc., a North Carolina
corporation, had restructured and formed a wholly-owned sub-
sidiary, FLI Holding Corp., which housed a Florida corporation
known as FL Food Lion, Inc. As a part of the restructuring, plain-
tiff formulated a strategy to reduce its North Carolina tax obliga-
tion by a circular movement of assets to Florida and the return of
cash to North Carolina through fees. Defendant concluded that
plaintiff's income should be combined with the income of FL Food
Lion, Inc. to reflect plaintiff's true net earnings in North Carolina
and plaintiff contended that its due process rights were violated by
defendant's failure to provide fair notice of changes in the guide-
lines regarding the combination of corporations for taxation. That
argument is not supported by the record; furthermore, the facts of
the case distinguish it from *Federal Communications Commission
v. Fox Television Stations, Inc.*, 183 L.Ed. 2d 234 (2012).

**2. Appeal and Error—decision of one panel of Court of
Appeals—binding on subsequent panels**

*Wal-Mart Stores East v. Hinton*, 197 N.C. App. 30, has not
been overturned and remains binding on subsequent panels of the
Court of Appeals, despite plaintiff's argument that it misread
N.C.G.S. § 105-130.6

### 3. Constitutional Law—North Carolina—retroactive taxes—no violation

The issue of whether the Department of Revenue violated the North Carolina constitutional prohibition on retroactive taxation in deciding to combine the income of two corporations for tax purposes was controlled by *Wal-mart Stores East v. Hinton*, 197 N.C. App. 30, which concluded that there was no violation.

### 4. Taxation—corporations—restructuring—true earnings—economic substance analysis

The Business Court did not apply an economic substance analysis in its determination that the income of two corporations should be combined to determine true earnings for tax purposes. A statement by the Business Court that a corporate restructuring lacked economic substance to the contrary was not referred to in the Business Court's conclusion; moreover, any error by the Business Court in making the statement had no bearing on whether the Department of Revenue erred by combining the corporate incomes because the Department of Revenue did not apply an economic substance analysis.

### 5. Taxation—penalty—notice of change in definition

The trial court erred by not granting defendant's motion for summary judgment on the issue of whether plaintiff was entitled to a refund of a tax penalty. Contrary to the statements of the trial court, the record contained documents that put plaintiff on notice of the definition of true earnings. Moreover, there was no genuine issue of material fact as to whether the penalty was due.

Appeal by plaintiff and defendant from order entered 17 February 2011 by Special Superior Court Judge for Complex Business Cases, Ben F. Tennille, in Wake County Superior Court. Heard in the Court of Appeals 7 February 2012.

*Hunton & Williams LLP, by Richard L. Wyatt, Jr., and Joseph P. Esposito, Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Reid L. Phillips, and Smith Moore Leatherwood LLP, by James G. Exum, Jr., Allison O. Van Laningham, and L. Cooper Harrell, for plaintiff.*

*Roy Cooper, Attorney General, by Kay Linn Miller Hobart, Special Deputy Attorney General, for defendant.*

*Andy Ellen, for North Carolina Retail Merchants Association, and Troutman Sanders LLP, by William G. Scoggin, for North Carolina Chamber of Commerce, amici curiae.*

*Alston & Bird LLP, by Jasper L. Cummings, Jr., for Amicus Council on State Taxation, amici curiae.*

THIGPEN, Judge.

Delhaize America, Inc., ("Plaintiff") filed a tax refund action seeking approximately $10 million in corporate income taxes and penalties from the State of North Carolina. The trial court entered an order on summary judgment upholding the decision of the North Carolina Department of Revenue ("Defendant") to combine Plaintiff and Plaintiff's Florida-based subsidiary for purposes of taxation, but invalidating the penalty imposed by Defendant. Plaintiff argues primarily on appeal that the Department of Revenue did not provide fair notice of an alleged change in the definition of "true earnings[,]" such that the corporate combination and the penalty imposed violated Plaintiff's procedural due process rights. Defendant argues on appeal that fair notice of the definition of "true earnings" was sufficient to satisfy procedural due process for both the combination and the penalty. We affirm the trial court's order, in part, and reverse, in part.

The facts of this case are largely undisputed. Plaintiff, formerly known as Food Lion, Inc. ("Food Lion"), a corporation having its principal place of business in Salisbury, North Carolina, restructured itself to accommodate growth, beginning in 1996 and continuing through 2004. During this time, Food Lion formed a wholly-owned subsidiary, FLI Holding Corp., which acquired Kash n' Karry Food Stores, Inc., a corporation operating retail grocery stores primarily in Florida. Food Lion also formed FL Food Lion, Inc., a Florida corporation housed under FLI Holding Corp.

As part of restructuring, Plaintiff—with the aid of its external auditor, Coopers & Lybrand—formulated a strategy to reduce its North Carolina tax obligation, called the "Vision Project." Coopers & Lybrand proposed creating interrelated companies to shift income from high tax jurisdictions to low or no tax jurisdictions. Specifically, the Vision Project strategy relied upon three elements: (1) Plaintiff would transfer assets to a related company not principally located in North Carolina; (2) Plaintiff would pay fees and royalties to the related company for use of the assets, which would create a tax deduction in North Carolina; and (3) the company would return cash to Plaintiff in

the form of tax free dividends. By implementing this strategy, Coopers & Lybrand estimated that Plaintiff's North Carolina annual income tax liability would be reduced by $9,579,848.00. Coopers & Lybrand also estimated that Plaintiff could save between $60 million and $75 million in North Carolina tax obligations over a five year period.

In December 1997, Plaintiff's board of directors approved the Vision Project, which was presented to the board of directors as the "State Tax Planning Project." After the Vision Project's approval and in accordance therewith, Plaintiff transferred assets to FL Food Lion, Inc., which was located in Florida. The transferred assets included, but were not limited to, the following: (1) ownership and operation of Food Lion stores located in Florida; (2) all Food Lion employees in Florida; (3) certain employees located in Salisbury, North Carolina; (4) services relating to Food Lion's national brand; and (5) its rights and interest in its private label trademarks and the Food Lion name and logo. Plaintiff conferred with Coopers & Lybrand to determine the appropriate amount that FL Food Lion, Inc., should charge its corporate grandparent for services, and Coopers & Lybrand compiled a range of fees that it believed complied with an arm's length standard. FL Food Lion, Inc., then charged Plaintiff fees for services, in accordance with the Vision Project. The cash flow between the entities was circular, and all of the royalties and fees Plaintiff paid to FL Food Lion, Inc., came back to Plaintiff in the form of tax free dividends. The payments for services Plaintiff made to FL Food Lion, Inc., and the dividend payments FL Food Lion, Inc., made to Plaintiff, had no impact on Plaintiff's actual cash flow. An objective of the Vision Project, according to a letter from Plaintiff's chief financial officer to the board of directors, was "the reduction of Food Lion's state income tax liability."

Plaintiff and FL Food Lion, Inc., did not file a consolidated tax return.[1] Plaintiff filed a North Carolina corporation tax return for the tax year ending 31 December 2000, reporting $2,565,741,505.00 in total net State income. Plaintiff reported that $25,485,927.00 was business income subject to apportionment. FL Food Lion, Inc., also filed a North Carolina corporation tax return for the same year, reporting $271,390,464.00 in total net State income and $271,390,464.00 as busi-

---

1. The Revenue Act forbade related corporations from filing a consolidated return with the Secretary of Revenue, unless specifically directed to do so in writing by the Secretary. N.C. Gen. Stat. § 105-130.14 (2009). N.C. Gen. Stat. § 105-130.14 was amended by 2010 N.C. Sess. Laws ch. 31, § 31.10.(e).

ness income subject to apportionment. Taxable income for North Carolina corporate income tax purposes is determined by multiplying the income subject to apportionment by the apportionment factor. The apportionment factor applied to business income subject to apportionment for Plaintiff was 41.6511%; however, the apportionment factor applied to business income subject to apportionment for Florida-based FL Food Lion, Inc., was significantly lower—15.0839%. After this calculation, Plaintiff's business income allocated to North Carolina was $10,615,169.00. The business income of FL Food Lion, Inc., allocated to North Carolina was $40,936,266.00. Plaintiff also claimed a tax credit for creating new jobs in North Carolina.

The North Carolina Department of Revenue ("the Department") conducted an audit of Plaintiff for the tax years 1998 through 2000. On 28 September 2004, following Plaintiff's audit, the Department concluded that Plaintiff's income should be combined with the income of FL Food Lion, Inc., to reflect Plaintiff's true net earnings in North Carolina, and the Department issued a Notice of Corporate Income Tax Assessment of additional tax, with interest, against Plaintiff.[2] The Department also imposed a penalty upon Plaintiff pursuant to N.C. Gen. Stat. § 105-236(5).

On 20 March 2006, Plaintiff paid the Department $4,387,164.00 in additional income taxes for the 2000 tax year, $1,289,068.00 in interest, and $1,188,088.00 in penalties. However, Plaintiff formally demanded a refund of the additional income tax, interest, and penalties in writing within the applicable protest period. The Secretary of Revenue, however, did not allow the refund.

On 28 December 2007, Plaintiff filed a complaint against the Secretary of Revenue alleging violations of N.C. Gen. Stat. § 105-130.6, N.C. Gen. Stat. § 105-130.16(b), the commerce clause, and due process. Plaintiff also alleged that by determining the assessment against Plaintiff, Defendant exercised an unconstitutional delegation of legislative power, imposed an unconstitutional retrospective taxation, violated the constitutional rule requiring uniformity, deprived Plaintiff of its constitutional rights pursuant to 42 U.S.C. § 1983, and violated the North Carolina Administrative Procedures Act. Plaintiff prayed for a refund of the amount of additional income tax, interest, and penalties paid by Plaintiff as a result of the audit and assessment of the Department.

---

2. Plaintiff was assessed approximately $20.6 million in additional tax, interest, and penalties for the tax years 1998 through 2000, which included approximately $6.8 million for the tax year 2000.

Both parties filed motions for summary judgment on 20 April 2010. In an order entered 17 February 2011, the Court granted partial summary judgment for both parties. Specifically, the Court granted Defendant's motion on the issue of combination of Plaintiff and FL Food Lion, Inc., and the resulting additional taxes and interest. However, the Court granted Plaintiff's motion for a refund of the penalties, concluding that the Department's assessment of the penalty against Plaintiff was "unfair and . . . a violation of the Fourteenth Amendment's procedural due process protections." The Court further concluded that requiring Plaintiff to "pay this punitive penalty . . . [was] a violation of the power of taxation under Article V, Section 2(1) of the North Carolina Constitution." The Business Court also concluded the Secretary of Revenue abused his discretion in ordering the twenty-five percent penalty. We affirm in part and reverse in part.

From this order, both Plaintiff and Defendant appeal.

## I. Standard of Review

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). "A defendant may show entitlement to summary judgment by: (1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 166, 684 S.E.2d 41, 46 (2009) (quotation omitted).

"An appeal from an order granting summary judgment solely raises issues of whether on the face of the record there is any genuine issue of material fact, and whether the prevailing party is entitled to judgment as a matter of law." *Id.* at 166, 684 S.E.2d at 46. (citation omitted). "We review a trial court's order granting or denying summary judgment *de novo*." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citations omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (quotation omitted). Our review, however, "is necessarily limited to whether the

trial court's conclusions as to the[] questions of law were correct ones." *Ellis v. Williams*, 319 N.C. 413, 415, 355 S.E.2d 479, 481 (1987).

This Court in *Wal-mart Stores East v. Hinton*, 197 N.C. App. 30, 50, 676 S.E.2d 634, 649 (2009), held that N.C. Gen. Stat. § 105-130.6 granted the Secretary of Revenue "discretionary authority to force combination of entities on a finding that a report does not disclose true earnings in North Carolina." Discretionary decisions of administrative agencies will not be disturbed by this Court absent an abuse of discretion. *Williams v. Burlington Indus.*, 318 N.C. 441, 446, 349 S.E.2d 842, 845 (1986).

## II.  Plaintiff's Appeal

### A.  Procedural Due Process

[1] In Plaintiff's first argument on appeal, it contends the Department of Revenue violated Plaintiff's protections of procedural due process by failing to provide fair notice of changes in its guidelines regarding combination of corporations for taxation pursuant to N.C. Gen. Stat. § 105-130.6[3] ; concealing the new approach from taxpayers and auditors; and applying the new approach retroactively. Plaintiff contends the trial court erred in failing to grant Plaintiff summary judgment on this issue. We disagree.

The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law." A similar requirement, that no "State [shall] deprive any person of life, liberty, or property without due process of law" is also comprised in the Fourteenth Amendment to the federal constitution. The Law of the Land Clause of the North Carolina Constitution, N.C. Const. art. I, § 19, "is synonymous with 'due process of law' as used in the Fourteenth Amendment to the Federal Constitution." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (quotation omitted).

"Procedural due process restricts governmental actions and decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 321,

---

3. Subsequent to the *Wal-Mart* decision, the North Carolina General Assembly repealed N.C. Gen. Stat. § 105-130.6, effective for taxable years beginning on or after January 1, 2012, and amended the applicable revenue statutes to address the issue presented in this appeal. *See* N.C. Gen. Stat. §§ 105-130.6, 105-236(a)(5)(f) (2011); 2010 N.C. Sess. Laws 31.10(b), (d).

**DELHAIZE AM., INC. v. LAY**

[222 N.C. App. 336 (2012)]

507 S.E.2d 272, 277 (1998) (quotation omitted). "The fundamental premise of procedural due process protection is notice and the opportunity to be heard." *Peace*, 349 N.C. at 322, 507 S.E.2d at 278 (citation omitted). More precisely, "[a]t a minimum, due process requires adequate notice of the charges and a fair opportunity to meet them, and the particulars of notice and hearing must be tailored to the capacities and circumstances of those who are to be heard." *In re Lamm*, 116 N.C. App. 382, 385-86, 448 S.E.2d 125, 128-29 (1994) (citations omitted). A deprivation of a property interest "fails to comply with due process if the statute or regulation under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *FCC v. Fox TV Stations, Inc.*, ____ U.S. ____, ____, 183 L. Ed. 2d 234, 246, 132 S. Ct. 2307, 2317 (2012) (quotation omitted).

"We examine procedural due process questions in two steps: first, we must determine whether there exists a liberty or property interest which has been interfered with by the State[;] . . . second, we must determine whether the procedures attendant upon that deprivation were constitutionally sufficient." *In re W.B.M.*, 202 N.C. App. 606, 615, 690 S.E.2d 41, 49 (2010) (citations omitted). As a threshold matter, a State's "exaction of a tax constitutes a deprivation of property" subject to the safeguards of the Due Process Clause." *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36, 110 S. Ct. 2238, 2250, 110 L. Ed. 2d 17, 35-36 (1990) (citations omitted).

"In all tax cases, the construction placed upon the statute by the Commissioner of Revenue, although not binding, will be given due consideration by a reviewing court." *Cape Hatteras Elec. Mbrshp. Corp. v. Lay*, ____ N.C. App. ____, ____, 708 S.E.2d 399, 404 (2011) (quotation omitted). "Ordinarily, the interpretation given to the provisions of our tax statutes by the Commissioner of Revenue will be held to be *prima facie* correct and such interpretation will be given due and careful consideration by this Court, though such interpretation is not controlling." *In re Vanderbilt University*, 252 N.C. 743, 747, 114 S.E.2d 655, 658 (1960).

At issue in this appeal are Defendant's guidelines, or alleged lack thereof, regarding combination of corporations for taxation pursuant to N.C. Gen. Stat. § 105-130.6, which provides, in pertinent part, the following:

DELHAIZE AM., INC. v. LAY

[222 N.C. App. 336 (2012)]

The net income of a corporation doing business in this State that is a parent, subsidiary, or affiliate of another corporation shall be determined by eliminating all payments to or charges by the parent, subsidiary, or affiliated corporation in excess of fair compensation in all intercompany transactions of any kind whatsoever. If the Secretary finds as a fact that a report by a corporation does not disclose the *true earnings* of the corporation on its business carried on in this State, the Secretary may require the corporation to file a consolidated return of the entire operations of the parent corporation and of its subsidiaries and affiliates, including its own operations and income. The Secretary shall determine the true amount of net income earned by such corporation in this State. (emphasis added).

N.C. Gen. Stat. § 105-130.6 (emphasis added).

Plaintiff argues on appeal that the Department of Revenue's policy regarding the calculation of "true earnings" pursuant to N.C. Gen. Stat. § 105-130.6 changed after decades of "ordering a combination only in the exceptional circumstance when inter-affiliate transactions failed to reflect fair compensation, and only if adjustments could not be made to the transactions to yield the corporation's true earnings." Plaintiff further states that " 'fair compensation' in inter-affiliate transactions" had been adequately evinced, prior to the standard shift, if corporations complied with " 'arm[']s length' standards." According to Plaintiff, the Department of Revenue "abandoned" this longstanding policy and adopted an "ad hoc approach, under which [the Department of Revenue] did not apply any universal guidelines for determining whether to combine corporations and their affiliates." Under the new approach, Plaintiff argues, the Department of Revenue "ordered approximately 100 combinations from 2000 to May 2010" without notifying taxpayers that it "had abandoned the statutory fair compensation standard for an ad hoc approach to combination" or issuing guidelines to taxpayers outlining the new policy. Rather, Plaintiff states the Secretary of Revenue publicly refused requests for combination guidelines.

The crux of Plaintiff's argument on appeal is that Defendant's combination of Plaintiff and FL Food Lion, Inc., pursuant to N.C. Gen. Stat. § 105-130.6–in light of Defendant's alleged failure to notify corporate taxpayers or provide guidelines for the change in the calculation of "true earnings"—violated procedural due process.

The United States Supreme Court recently addressed a similar procedural due process question in *Federal Communications Commission v. Fox Television Stations, Inc.,* \_\_\_\_ U.S. \_\_\_\_, 183 L. Ed. 2d 234, 132 S. Ct. 2307 (2012). In *Fox Television Stations,* the ˌCourt examined the Commission's indecency policy interpreting Title 18 U.S.C. § 1464, which provides that "[w]hoever utters any obscene, indecent, or profane language by means of radio communication shall be fined . . . or imprisoned not more than two years, or both." *Id.,* \_\_\_\_ U.S. at \_\_\_\_, 183 L. Ed. 2d at 240, 132 S. Ct. at 2312. The Commission's indecency policy, like many administrative policies interpreting statutes, evolved over time. In 1987, the Commission determined its application of the standard enunciated by the Court in *FCC v. Pacifica Foundation,* 438 U.S. 726, 57 L. Ed. 2d 1073, 98 S. Ct. 3026 (1978), was too narrow, and the Commission stated that in later cases its definition of indecent language would "appropriately includ[e] a broader range of material than the seven specific words at issue in [the Carlin monologue]." *Fox Television Stations,* \_\_\_\_ U.S. at \_\_\_\_, 183 L. Ed. 2d at 241, 132 S. Ct. at 2313. In 2001, the Commission issued a policy statement restating what constituted indecent material as measured by contemporary community standards for the broadcast medium and describing three factors that had proved significant to the determination of what is considered patently offensive. In orders issued between 1987 and 2001, and in the 2001 policy statement, the Commission noted that repetition of and persistent focus of indecent material exacerbated the potential offensiveness of a broadcast, whereas fleeting and isolated material may not be indecent.

The following incidents of alleged indecency were either at issue on appeal, or were pertinent to the Court's analysis, in *Fox Television Stations:* In 2002, a broadcast by Fox aired containing a fleeting expletive—the F-word. *Id.,* \_\_\_\_ U.S. at \_\_\_\_, 183 L. Ed. 2d at 242, 132 S. Ct. at 2314. Similarly, in 2003, another broadcast by Fox aired containing a fleeting expletive—the F-word. *Id.* On 25 February 2003, a broadcast by ABC aired containing seven seconds of fleeting nudity. *Id.* Subsequent to all of the foregoing incidents, a broadcast of the *Golden Globe Awards* by NBC aired containing a fleeting expletive— the F-word—for which the Commission issued a decision sanctioning NBC. In that decision (the "NBC *Golden Globes* Order"), the Commission reversed prior rulings regarding the fleeting and isolated nature of potentially indecent material and found that the use of the F-word was actionably indecent, explaining: "[T]he mere fact that specific words or phrases are not sustained or repeated does not mandate a finding that material that is otherwise patently offensive to

the broadcast medium is not indecent." *Id.*, ____ U.S. at ____, 183 L. Ed. 2d. at 243, 132 S. Ct. at 2314. The Commission then applied the new policy enunciated in the NBC *Golden Globes* Order, regarding fleeting expletives and fleeting nudity, to the 2002 and 2003 broadcasts of Fox and ABC, finding the material to be in violation of that standard. *Id.*, ____ U.S. at ____, 183 L. Ed. 2d. at 238, 132 S. Ct. at 2311.

On appeal, Fox and ABC claimed they did not have sufficient fair notice from the Commission of what was proscribed by Title 18 U.S.C. § 1464, such that their procedural due process rights were violated by the Commission's application of the new policy enunciated in the NBC *Golden Globes* Order to the broadcast incidents on Fox and ABC prior to the NBC *Golden Globes* Order. The Court stated that the "regulatory history, however, makes it apparent that the Commission policy in place at the time of the broadcasts gave no notice to Fox or ABC that a fleeting expletive or a brief shot of nudity could be actionably indecent; yet Fox and ABC were found to be in violation." *Id.*, ____ U.S. at ____, 183 L. Ed. 2d. at 246, 132 S. Ct. at 2318. With regard to the Fox incidents, the Government conceded that "Fox did not have reasonable notice at the time of the broadcasts that the Commission would consider non-repeated expletives indecent." *Id.*, ____ U.S. at ____, 183 L. Ed. 2d. at 247, 132 S. Ct. at 2318. With regard to the ABC incident, the Government argued "that ABC had notice that the scene [of fleeting nudity] would be considered indecent in light of a 1960 decision where the Commission declared that the 'televising of nudes might well raise a serious question of programming contrary to 18 U.S.C. § 1464.' " *Id.*, ____ U.S. at ____, 183 L. Ed. 2d. at 248, 132 S. Ct. at 2319. The Court pointed out, however, that a different "Commission ruling prior to the airing of [the incident at issue] had deemed 30 seconds of nude buttocks 'very brief' and not actionably indecent in the context of the broadcast." *Id.*, ____ U.S. at ____, 183 L. Ed. 2d. at 248, 132 S. Ct. at 2319-20.

The Court based its decision on the "record of agency decisions," concluding that in "the absence of any notice in the 2001 Guidance that seven seconds of nude buttocks would be found indecent, ABC lacked constitutionally sufficient notice prior to being sanctioned." *Id.*, ____ U.S. at ____, 183 L. Ed. 2d. at 248, 132 S. Ct. at 2320. The Court also concluded the Commission failed to give Fox fair notice that fleeting expletives could be found actionably indecent.

It is upon this most recent procedural due process opinion delivered from the United States Supreme Court, *Television Stations*, ____ U.S. ____, 183 L. Ed. 2d 234, 132 S. Ct. 2307, that we analyze

Plaintiff's argument here—that Defendant did not supply Plaintiff with adequate fair notice of a change in the Department of Revenue's interpretation of "true earnings" pursuant to N.C. Gen. Stat. § 105-130.6. We believe *Fox Television Stations* is distinguishable from the present case as explained in further detail below.

Subsequent to the 2004 combination of Plaintiff and FL Food Lion, Inc., this Court analyzed the Department's interpretation of the meaning of "true earnings" in the context of N.C. Gen. Stat. § 105-130.6, in the opinion, *Wal-Mart Stores East v. Hinton*, 197 N.C. App. 30, 676 S.E.2d 634 (2009). In *Wal-mart*, this Court stated the following:

> The language of the statute on its face does not limit the Secretary's authority to require combined reporting by mandating that he first find that the entity engaged in "non-arm's length dealings," that is, conducted intercompany transactions at amounts other than fair value. To the contrary, the language of the statute is broad, allowing the Secretary to require combined reporting if he finds as a fact that a report by a corporation does not disclose the true earnings of the corporation on its business carried on in this State. On its face, it does not restrict the Secretary to a finding of a particular type of transaction or dealing.

*Id.* at 39, 676 S.E.2d at 642 (citing N.C. Gen. Stat. § 105-130.6). The *Wal-mart* Court rejected the plaintiff's proposed definition of "true earnings"—that "true earnings" should be defined as "the taxpayer's income . . . if it had no affiliates and dealt with all parties on an arm's length basis[.]" *Id.* at 38, 676 S.E.2d at 642. This Court explained, "if the entire enterprise is a unitary business,[4] true earnings in the State may be calculated by apportioning the earnings of the entire enterprise on the basis of sales and other indicia of activity in the State." *Id.* at 40, 676 S.E.2d at 643. We further explained:

> If a taxpayer reports income based on the discrete enterprise method, then plaintiff is correct, absent any non-arm's length transactions the taxpayer's reported income will reflect its true earnings in the State. However, where a taxpayer's business is

---

4. The term unitary "is simply descriptive, and primarily means that the concern to which it is applied is carrying on one kind of business—a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration, as independent units. By contrast, a dual or multiform business must show units of a substantial separateness and completeness, such as might be maintained as an independent business (however convenient and profitable it may be to operate them conjointly), and capable of producing a profit in and of themselves." *Maxwell v. Kent-Coffey Mfg. Co.*, 204 N.C. 365, 369-370, 168 S.E. 397, 399 (1933).

concededly unitary, and where, as here, the taxpayer attempts to reclassify income as nonbusiness or nonapportionable, the reclassification has the potential to distort true earnings in North Carolina even if all intercompany transactions are accounted for at arm's length, or fair value, prices.

*Id.* at 41, 676 S.E.2d at 643.

The *Wal-Mart* Court then defined "true earnings" in the context of N.C. Gen. Stat. § 105-130.6. "[E]ssential[ly][,]" the *Wal-mart* Court stated, the "meaning of the phrase 'true earnings' refers to the limit on state taxation found in the United States Constitution." *Id.* at 40, 676 S.E.2d at 643 (citing *Allied-Signal, Inc. v. Div. of Taxation*, 504 U.S. 768, 772-73, 119 L. Ed. 2d 533, 542, 112 S. Ct. 2251, 2255 (1992)).

Defendant argues in its brief that *Wal-mart* "governs this appeal" and the Court in *Wal-mart* "granted the Secretary discretionary authority to force combination of entities on a finding that a report does not disclose true earnings in North Carolina." *Id.* at 50, 676 S.E.2d at 649. We agree with Defendant's assertion that the *Wal-mart* Court held that the Secretary of Revenue has discretionary authority to force combination of corporations pursuant to N.C. Gen. Stat. § 105-130.6. Further, the *Wal-mart* Court defined "true earnings" broadly, limiting the Secretary of Revenue's discretion to determine whether a corporation has disclosed "true earnings" only to the extent the United States Supreme Court has limited state taxation of corporations. *Wal-mart*, 197 N.C. App. at 40, 676 S.E.2d at 643 ("The essential meaning of the phrase 'true earnings' refers to the limit on state taxation found in the United States Constitution") (citing *Allied-Signal*, 504 U.S. at 772-73, 119 L. Ed. 2d at 542, 112 S. Ct. at 2255).

Among the limitations the Constitution sets on the power of a single State to tax the multistate income of a nondomiciliary corporation are these: There must be a minimal connection between the interstate activities and the taxing State, and there must be a rational relation between the income attributed to the taxing State and the intrastate value of the corporate business. Under our precedents, a State need not attempt to isolate the intrastate income-producing activities from the rest of the business; it may tax an apportioned sum of the corporation's multistate business if the business is unitary. A State may not tax a nondomiciliary corporation's income, however, if it is derived from unrelated business activity which constitutes a discrete business enterprise.

*Allied-Signal,* 504 U.S. at 772-73, 119 L. Ed. 2d at 542, 112 S. Ct. at 2255 (citations and quotations omitted).

The question in this case is not, however, whether Defendant erred by interpreting the definition of "true earnings" in the context of N.C. Gen. Stat. § 105-130.6 more broadly than the alleged historical definition—fair compensation gained through arm's length transactions between corporations and their affiliates. *Walmart* foreclosed that question, affirmed the Department of Revenue, and defined "true earnings" broadly, limiting the Department of Revenue's discretionary authority to force combination of entities upon a finding of nondisclosure of "true earnings" only to the extent that the United States Supreme Court has placed constitutional limits on state taxation of multi-state corporate transactions with their affiliates. The question in this case is whether Defendant violated Plaintiff's procedural due process rights by allegedly failing to give Plaintiff notice that the definition of "true earnings" is not limited to a determination of whether corporations and their affiliates performed transactions at arm's length. We must examine previous decisions and guidelines of the Department of Revenue to determine whether Plaintiff in this case received adequate fair notice of the definition of "true earnings" sufficient to satisfy due process.

The concept of corporate combination for purposes of taxation in North Carolina is not new. The Department of Revenue has published Technical Bulletins since 1964 providing guidance to corporate taxpayers on the subject of combination of corporations for the purpose of preventing a parent, subsidiary or affiliated corporation from reporting a distorted net income by siphoning off its income properly attributable to its operations in North Carolina to an out-of-state, affiliated corporation. The record in this case shows that Defendant has required combined reporting pursuant to N.C. Gen. Stat. § 105-130.6 as early as 1973.

Contrary to Plaintiff's argument on appeal, Defendant posits, and we agree, that corporate combination—pursuant to N.C. Gen. Stat. § 105-130.6 and in scenarios other than those in which the definition of true earnings was limited to fair compensation gained through arm's length transactions between corporations and their affiliates—is also not a novel concept. The record contains the following documents showing exactly such corporation combinations:

An Attorney General's Opinion, dated 27 October 1987,[5] addressed the following questions: (1) whether, in the context of "diversion of income producing property to a subsidiary corporation[,]" N.C. Gen. Stat. § 105-130.6 may be applied to require a consolidation of "the involved corporations"; and (2) whether the consolidation may be limited to "only those corporations which clearly affect the 'true earnings' of the taxpayer filing in this State[.]"[6] In response to the first question, the opinion concludes, "[u]pon a finding that the corporation's report does not reflect taxable income attributable to this State, the Secretary may require a consolidated return. In my opinion, the evidence of diversion of income producing property to the subsidiary corporation outlined in your memorandum would be sufficient to support such a finding and the consequent requirement of filing a consolidated return." In response to the second question, the opinion concludes, "it appears to me that if inclusion of all related corporations would distort the true amount of net income taxable in this State under the Corporate Income Tax Act as interpreted by the Secretary, the Secretary may properly limit the consolidated return to only those corporations which affect the true amount of net income taxable by this State. Such a restriction would be consistent with the purpose of the statute." The opinion does not mention fair compensation for arm's length transactions but focuses instead upon "disort[ion]" of "true earnings[.]"

A final decision of the North Carolina Department of Revenue, 1997 N.C. Tax LEXIS 48 (No. 95-144) (No. 95-144) (August 26, 1997), stated that if the Secretary of Revenue "finds as a fact that the return as filed by the taxpayer does not disclose the true earnings of the corporation on its business carried on in the state, the Secretary may require the corporation to file a combined return of the taxpayer and those affiliated corporations necessary to determine the true amount of net income earned by the unitary group in the state." There was no reference to payments in excess of fair compensation or arm's length transactions.

---

5. An opinion of the Attorney General construing a tax statute is "advisory[.]" *In re Virginia-Carolina Chemical Corp.*, 248 N.C. 531, 538, 103 S.E.2d 823, 828 (1958); *see* N.C. Gen. Stat. § 114-2 (2011).

6. Opinions of the Attorney General "should be accorded some weight on the question presented, but they are not binding on this Court." *Delconte v. State*, 313 N.C. 384, 387, n.3, 329 S.E.2d 636, 639, n.3 (1985).

In another final decision of the North Carolina Department of Revenue, 2000 N.C. Tax LEXIS 18 (No. 97-990) (September 19, 2000),[7] the Department took the position that "related retail com panies, . . . transferr[ed] their trademarks to Taxpayers for little or no consideration, then licens[ed] the trademarks they formerly owned back from the Taxpayers, who then recorded the payment of the required royalty fees in accounts receivable and never converted them into cash, shifted millions of dollars of income to Delaware that would normally have been taxable in North Carolina." The taxpayer argued that "because the royalty rate they charged to the related retail companies was considered 'arm[']s length' under the standard set forth in I.R.C. § 482 according to [their expert witness], then no distortion of income occurred and the requirement of a combined report would be inappropriate." The Assistant Secretary of Revenue concluded the following: "Although the Taxpayers insist that the trademarks originally owned and used by the related retail companies were transferred to them for legitimate business reasons other than tax avoidance, the fact remains that the profitability of the related retail companies decreased precipitously immediately subsequent to the trademark transfers. . . . In my judgment, the transactions entered into between the Taxpayers and their related retail companies arbitrarily shifted income between them, thereby improperly reflecting their true net income and providing a basis to require the filing of a combined return pursuant to G.S. 105-130.6 and 105-130.16."

Plaintiff's procedural due process argument hinges upon the alleged failure of the Department of Revenue to give Plaintiff notice that the definition of "true earnings," for purposes of corporate combination with their affiliates for state taxation, had changed. Plaintiff's argument, more specifically, is that Defendant deliberately concealed its criteria for corporate combination and that Defendant operated in an *ad hoc* manner without ascertainable standards. We do not believe this argument is supported by the evidence of record in this case. We further believe the facts of this case distinguish it from the recent United States Supreme Court decision, *Fox Television Stations*, ____ U.S. ____, 183 L. Ed. 2d. 234, 132 S. Ct. 2307, in which the only notice to ABC was "a 1960 decision where the Commission declared that the 'televising of nudes might well raise a serious question of programming contrary to 18 U.S.C. § 1464.' " *Id.*, ____ U.S. at

---

7. We recognize that this final decision has no bearing on notice with regard to Plaintiff's 1998 and 1999 tax returns; however, Plaintiff's tax returns for the tax year 2000 were signed by Plaintiff's Corporate Tax Manager, Mr. Keith Cunningham, on 15 October 2001.

\_\_\_\_, 183 L. Ed. 2d. at 248, 132 S. Ct. at 2319. The record here contains documents—some of which were final decisions of the Department of Revenue, available to Plaintiff at the precise time they were formulating and executing the Vision Project—which we believe served to put Plaintiff on notice that the definition of "true earnings" is not limited to a showing that all transactions were "arm's length" and for "fair compensation." Importantly, the record contains one final decision of the Department of Revenue dated 26 August 1997, which was less than three months prior to the 14 November 1997 submission by Coopers & Lybrand of a Vision Project report to Food Lion, on the specific question of "[w]hether there are legal barriers to the successful implementation and defense of the proposed structure." The 26 August 1997 final decision of the Department of Revenue makes no reference to payments in excess of fair compensation or arm's length transactions, instead focusing on language regarding the "disclos[ure]" of "the true earnings of the corporation on its business carried on in the state," and stating that "the Secretary may require the corporation to file a combined return of the taxpayer and those affiliated corporations necessary to determine the *true amount of net income earned by the unitary group* in the state." (emphasis added). The 26 August 1997 final decision of the Department of Revenue found the following as fact:

> It is apparent that [Subsidiary Three Investment Company] was utilized during the tax year 1990 solely for the purpose of receiving the stock of [Subsidiary One Operating Company] and [Subsidiary Two Operating Company] from [Company A] and consummating the sales, thereby transferring the gain recognized on these sales from [Company A] to [Subsidiary Three Investment Company], the Delaware holding company. . . . [Taxpayer] reported dividend income from foreign subsidiaries and domestic affiliated corporations on its North Carolina 1990 return of approximately $122 million. Of this amount, approximately $107 million was from [Company A]. [Taxpayer] excluded the dividend income from its apportionable business income. . . . The substance of these transactions was that [Taxpayer] sold the [Industry Group], which included [Company A], [Subsidiary One Operating Company], [Subsidiary Two Operating Company] and [Joint-Venture Company], to [COMPANY D] for a total gain of $60,357,349. . . . [Taxpayer] claimed a loss from the sale of [Company A], a wholly-owned subsidiary, as an apportionable business loss under N.C.G.S. § 105-130.4.

In its final decision, the Department of Revenue explained:

> [I]t is taxpayer's position, however, which ignores economic reality and distorts the true economic picture of [Taxpayer]'s ownership and disposition of the [Industry Group]. Through the various transactions taxpayer set in motion, most occurring on a single day, [Taxpayer] attempted to convert a profitable sale into a nonprofitable one. The economic reality, however, is not that taxpayer recognized a loss on the sale, and then, coincidentally, received a dividend; the economic reality is that [Taxpayer] recognized an ultimate gain on the series of sales. [The expert witness] states that, in order for a taxing scheme to be fair, a unitary business should be taxed "on an amount that... correspond[s] to its economic income." Here, the loss claimed by [Taxpayer] on its return bore no relation to the economic income it received from the sale of the [Industry Group], a gain of approximately $60.4 million. Therefore, [Taxpayer]'s return did not reflect its true net income and its net income properly attributable to its business carried on in the state. . . . [I]mproperly isolating or "cherry picking" the gain from the foreign subsidiaries and "geographically sourcing" it to the Delaware holding company while "geographically sourcing" the manufactured loss to North Carolina distorts [Taxpayer]'s apportionable income from its unitary business carried on in the state. . . . When the Secretary of Revenue has reason to believe that any corporation so conducts its trade or business in such a manner as to either directly or indirectly distort its true net income and the net income properly attributable to the State, whether by the arbitrary shifting of income, through price fixing, charges for service, or otherwise, whereby the net income is arbitrarily assigned to one or other unit in a group of taxpayers carrying on business under a substantially common control, he may require such facts as he deems necessary for the proper computation of the entire net income and the net income properly attributable to the State, and in determining the same, the Secretary of Revenue shall have regard to the fair profit which would normally arise from the conduct of the trade or business. . . . The unitary group effectively assigned the profit that [Taxpayer] would have recognized on the sale of the [Industry Group] to the Delaware holding company, where it was then returned to [Taxpayer] in the form of a dividend. This decision recognizes the substance of the gains recognized and not the mechanical form and labels attached to the realization of such profits.

The Department of Revenue concluded that a combined return should be filed. Less than three months later, in the 14 November 1997 report, Coopers & Lybrand acknowledged that "the courts have not specifically addressed the issue of whether intercompany fees must reflect an arm's length transaction in order to be valid as fair compensation." Plaintiff, however, did not seek a private letter ruling[8] from the Department of Revenue on this specific question presented by the Coopers & Lybrand report.[9] The Coopers & Lybrand report also states multiple times a premise remarkably similar to this Court's holding in *Walmart* more than one decade later: "the Secretary of Revenue may force combined filing of affiliate corporations if the Secretary finds that a corporation's report does not disclose the true net earnings of the corporation[.]" The Coopers & Lybrand report cites a 1 July 1997 final decision of the Department of Revenue, which stated "the Department of Revenue has the statutory authority to force a combination of entities *if it finds that taxpayer corporation's return does not disclose its true earnings in the state.*" (emphasis added).

We believe the trial court did not err by concluding Defendant did not violate Plaintiff's procedural due process rights by forcing a combination of Plaintiff and FL Food Lion, Inc., pursuant to N.C. Gen. Stat. § 105-130.6, and therefore, we affirm this portion of the trial court's order.

## B. *Wal-mart* and N.C. Gen. Stat. § 105-130.6

**[2]** In Plaintiff's second argument on appeal, it contends *Wal-mart*, 197 N.C. App. 30, 676 S.E.2d 634, misread N.C. Gen. Stat. § 105-130.6 when it defined "true earnings." We find this argument unpersuasive. Regardless of whether there is merit to Plaintiff's argument that

---

8. Numerous other corporate taxpayers sought private letter rulings from the Department of Revenue in the 1990s concerning corporate combination. These letters were included in the record and indicated that the definition of true earnings was not limited to a showing that all transactions were arm's length and for fair compensation.

9. Although not dispositive on the issue of notice, we find the following evidence of record contrary to Plaintiff's assertion that Defendant strategically and "deliberately concealed" information: In late 1997, a corporate taxpayer posed the exact question at issue in this ligation to the Secretary of Revenue in a private letter request: "If all intercompany transactions are conducted at arm[']s length, will the Secretary be precluded from requiring a consolidated or combined return?" The Department's 1 October 1997 response, approximately one month before the Coopers & Lybrand Vision Project report to Plaintiff, was clear: "No. Under G.S. 105-130.6, the Secretary may at her discretion require a 'consolidated return' in order to determine the true net income attributed to this State. . . . The Secretary is not precluded from requiring a combined return even if dealings are conducted at 'arm[']s length[.]' "

*Wal-mart* misread N.C. Gen. Stat. § 105-130.6, we are bound by the decision of the *Wal-mart* Court. "[W]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). *Wal-mart* has not been overturned; therefore, we are bound by the *Wal-mart* Court's interpretation of N.C. Gen. Stat. § 105-130.6.

## C. Constitutional Limitations on Taxing Power

[3] In Plaintiff's third argument, it contends the trial court erred in failing to conclude the Department of Revenue violated North Carolina's constitutional limitations on the taxing power. We disagree. Specifically, Plaintiff argues that Defendant violated the prohibition against retroactive taxation in Article I, Section 16 of the North Carolina Constitution.[10] However, the Court in *Wal-mart* has already addressed this particular question and concluded that such a tax does not violate Article I, Section 16. *Wal-mart*, 197 N.C. App. at 48-49, 676 S.E.2d at 648 (holding that the tax did not violate Article I, Section 16, because a section of the North Carolina Administrative Code "spoke to [the] plaintiff's situation[;]" citing 17 N.C.A.C. § 5C.0703 (2000), which provided that "[i]ncome is business income unless it is clearly classifiable as nonbusiness income[;] [a] taxpayer must establish that its classification of income as nonbusiness income is proper. . . . Dividend income is business income if . . . [t]he dividend is received from a unitary subsidiary of the taxpayer").

## D. "Economic Substance" Analysis

[4] In Plaintiff's final argument on appeal, it contends the trial court erred in applying an "economic substance" analysis. We disagree. Plaintiff takes issue with the Business Court's statement that "the Vision Project . . . part of Food Lion's restructuring effort lacked economic substance." While arguing that the Business Court erred by rendering the foregoing "conclusion," Plaintiff simultaneously admits in its brief that the Department of Revenue "did not apply the economic substance doctrine in its audit of Delhaize." The statement by the Business Court that the Vision Project lacked economic substance was not a legal conclusion, and was not referenced in the Business Court's conclusion that the Department of Revenue did not abuse its discretion in determining that Plaintiff and FL Food Lion,

---

10. "No law taxing retrospectively sales, purchases, or other acts previously done shall be enacted." N.C. Const. art. I, § 16.

Inc., must be combined for purposes of calculating Plaintiff's true earnings pursuant to N.C. Gen. Stat. § 105-130.6. Moreover, assuming *arguendo* Plaintiff's argument—that the Business Court erred in stating that the Vision Project lacked economic substance—was valid, this would have no bearing on the question of whether the Department of Revenue abused its discretion by combining Plaintiff and FL Food Lion, Inc., for purposes of taxation, as Defendant did not apply an economic substance analysis.

### III.  Defendant's Appeal

### A.  Refund of Penalty

**[5]** In Defendant's first and only argument on appeal, Defendant contends the trial court erred by concluding Plaintiff was entitled to a refund of the penalty assessed by Defendant in the amount of $1,188,008.00. We agree.

Defendant assessed penalties against Plaintiff pursuant to N.C. Gen. Stat. § 105-236(a)(5), because Plaintiff "understated its tax by more than 87% as a result of improper deductions." N.C. Gen. Stat. § 105-236(a)(5) provides, in pertinent part, the following:

(5) Negligence. –

a.  Finding of negligence.—For negligent failure to comply with any of the provisions to which this Article applies, or rules issued pursuant thereto, without intent to defraud, the Secretary shall assess a penalty equal to ten percent (10%) of the deficiency due to the negligence.

. . .

c.  Other large tax deficiency.—In the case of a tax other than individual income tax, if a taxpayer understates tax liability by twenty-five percent (25%) or more, the Secretary shall assess a penalty equal to twenty-five percent (25%) of the deficiency.

N.C. Gen. Stat. § 105-236(a)(5) (2011).

The Court in *Wal-mart*, 197 N.C. App. 30, 676 S.E.2d 634, upheld the Department of Revenue's assessment of penalties against *Wal-mart* under similar circumstances:

[P]enalties were assessed under N.C. Gen. Stat. § 105-236(a)(5)(c), which does not require a finding of negligence as is necessary under N.C. Gen. Stat. § 105-236(a)(5)(a). Plaintiff does not appear to dispute that if the Secretary's assessment based on the com-

bined returns is lawful, then plaintiff's income was understated by more than 25%, which operates to invoke the penalty provision of N.C. Gen. Stat. § 105-236(a)(5)(a) without a finding of negligence.

We determined above that the Secretary's assessment based on the combined returns was indeed lawful.

*Id.* at 58, 676 S.E.2d at 653-54.

The trial court in this case attempted to distinguish *Wal-mart* by stating the following:

> [*Wal-mart*] held that the concept of "true earnings is a sufficiently definite standard" to allow the Secretary to order a combination and that the Secretary has "discretionary authority to force combination of entities" when it finds that a return does not disclose "true earnings in North Carolina." Id. at 50-1, 676 S.E.2d at 649. The Court made no mention, however, of whether the twenty-five percent (25%) penalty assessed in that case also could withstand constitutional scrutiny. . . . While the Department's assessment of an automatic penalty here does not rise to a level of oppression that would "shock the conscience," and thereby violate substantive due process, . . . the assessment does raise serious questions concerning its comportment with procedural due process. . . . When guidance from the Secretary is so elusive that the Department's own auditors do not know the conditions that will give rise to a twenty-five percent (25%) penalty, and when decisions about the imposition of the penalty are made by a guarded coterie applying unpublished criteria, who appear to revel in the criteria's mystery, then ordinary taxpayers "exercising ordinary common sense" cannot sufficiently understand or predict when a penalty will be assessed. Additionally, taxpayers cannot arrange their affairs to avoid punishment because no published criteria exists with which they can comply. . . . Here, the Department punished Delhaize for properly filing separate returns according to the only method permitted under North Carolina law. It assessed a substantial penalty for understating a tax obligation that Delhaize had no duty to pay when it filed its original return and could not have known it would be required to pay later. The tax structure resulting in this penalty assessment was fundamentally unfair and has been corrected by the Legislature. The Department's assessment of the penalty against Delhaize is unfair and is a violation of the Fourteenth Amendment's procedural due process protections.

If the above statements by the trial court were supported by the evidence of record, we would agree with the trial court's conclusion. However, as we have previously stated, the record here contains documents that put Plaintiff on notice that the definition of "true earnings" is not limited to a showing that all transactions were "arm's length" and for "fair compensation." These documents, we believe, foreclose any genuine issue of material fact on the procedural due process issue: Plaintiff received fair notice of the definition of "true earnings," such that Plaintiff could expect combination for purposes of taxation. Therefore, we reverse the decision of the trial court granting Plaintiff's motion for summary judgment on the basis that "[t]he Department's assessment of the penalty against Delhaize is unfair and is a violation of the Fourteenth Amendment's procedural due process protections." Additionally, because the *Wal-mart* Court held that the "large tax deficiency" penalty pursuant to N.C. Gen. Stat. § 105-236(a)(5)(c) is invoked if the taxpayer understates its tax by more than 25%, and because Plaintiff here—in a manner indistinguishable from Wal-mart, the corporate taxpayer in *Wal-mart*, 197 N.C. App. 30, 676 S.E.2d 634—understated its tax liability by more than 25% as a result of the Vision Project, we believe there is no genuine issue of material fact on this issue, and the penalty pursuant to N.C. Gen. Stat. § 105-236(a)(5)(c) is due. The trial court erred by not granting Defendant's motion for summary judgment on the issue of the tax penalty. We remand for further proceedings not inconsistent with this opinion.

AFFIRMED, in part; REVERSED, in part.

Judges STROUD and McCULLOUGH concur.